

FILED
CLERK, U.S. DISTRICT COURT

MAR 1 3 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1  WRIGHT, FINLAY & ZAK, LLP
2  T. Robert Finlay, Esq., SBN 167280
   Nicole S. Dunn, Esq., SBN 213550
3  4665 MacArthur Court, Suite 280
4  Newport Beach, CA 92660
5  Telephone: (949) 477-5050; Facsimile: (949) 477-9200

6  Attorneys for Defendants, CITIBANK, N.A. AS TRUSTEE FOR AMERICAN
7  HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE BACKED PASS-
   THROUGH CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL,
8  INC.; POWER DEFAULT SERVICES, INC.

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  KATHLEEN ANGEL EISENBERG ) Case No.:
14  aka , KATHLEEN ANGEL
                              **CV13-01814** CAS (JPRx)
15          Plaintiff,        )
16                            ) **NOTICE OF REMOVAL OF ACTION**
17      vs.                   ) **PURSUANT TO 28 U.S.C. §1441(b)**
                              )
18  CITIBANK, N.A. AS TRUSTEE ) **[DIVERSITY OF CITIZENSHIP]**
19  FOR AMERICAN HOME         )
    MORTGAGE ASSETS TRUST     )
20  2006-4 MORTGAGE BACKED    )
21  PASS-THROUGH CERTIFICATES )
    SERIES 2006-4; HOMEWARD   )
22  RESIDENTIAL, INC.; POWER  )
23  DEFAULT SERVICES, INC.; and ) Complaint filed:  February 6, 2013
24  DOES 1 THROUGH 40,        )
    INCLUSIVE                 )
25                            )
26          Defendants.       )

27

28       **TO THE CLERK OF THE UNITED STATES DISTRICT COURT**
   **FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

-1-

1    **PLEASE TAKE NOTICE** that Defendants CITIBANK, N.A. AS

2    TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4

3    MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4

4    ("Citi"); HOMEWARD RESIDENTIAL, INC. ("Homeward"); POWER

5    DEFAULT SERVICES, INC. ("Power Default"), by and through their counsel of

6    record, Wright, Finlay & Zak, LLP, hereby remove to this Court the state court

7    action described below:

8           1.      On February 6, 2013, Plaintiff KATHLEEN ANGEL EISENBERG

9    ("Plaintiff") filed a complaint (the "Complaint") in the Superior Court of

10   California for the County of Los Angeles (the "State Court"), entitled *Eisenberg v.*

11   *Citibank, N.A. As Trustee For American Home Mortgage Assets Trust 2006-4*

12   *Mortgage Backed Pass-Through Certificates Series 2006-4 Inc. et al*, Case No.

13   LC099748 (the "State Court Action"). The named defendants in this State Court

14   Action are Citi, Homeward and Power Default. True and correct copies of the

15   Summons and Complaint are attached hereto as **Exhibit "A"** and incorporated

16   herein by reference.

17          2.      Plaintiff's Complaint is the first pleading in the State Court Action.

18   Plaintiff's Complaint was served on Defendant on February 11, 2013.

19   Accordingly, the removal of this action is timely as it occurred within one year of

20   the date of filing of the Complaint and within thirty days of receipt of the

21   Complaint. 28 *U.S.C.,* §1446(b);  *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir.,

22   2011) [holding that held that each defendant is entitled to thirty days to exercise his

23   removal rights after being served.]

24          3.      In addition, true and correct copies of all other documents on file in

25   the State Court Action, as of the date of this Notice, are collectively attached

26   hereto as **Exhibit "B"** and incorporated herein by reference.

27   ///

28   ///

-2-

NOTICE OF REMOVAL OF ACTION

## REMOVAL BASED ON DIVERSITY OF CITIZENSHIP

The State Court Action may be removed to this Court in accordance with 28 U.S.C. § 1441(b) since this Court has original jurisdiction, pursuant to 12 U.S.C. § 1332, on the basis of diversity jurisdiction. Specifically, the State Court Action is a civil action between citizens of different states, the amount in controversy exceeds the sum of $75,000.00.

**I.    Diversity of Citizenship.** In order for the State Court Action to qualify for diversity of citizenship jurisdiction, Plaintiff's citizenship must be completely diverse from the named defendants' respective citizenships. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); see *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). As set forth below, Plaintiff's citizenship is completely diverse from the Defendants' respective citizenships.

**a.        *Plaintiff's Citizenship.*** A natural person's citizenship is determined by his or her naturalization to the United States and domicile state at the time of filing (which is the state he or she resides in with the intention to remain or to which he or she intends to return). *Kanter v. Warner–Lambert Co.,* 265 F3d 853, 857 (9th Cir. 2001). In the present matter, Plaintiff was domiciled in Los Angeles, California at the time of filing. *See* Complaint, attached hereto as Exhibit "A", ¶ 1.  Therefore, Plaintiff is deemed a citizen of the State of **California** for the purposes of diversity citizenship jurisdiction.

***Named Defendants' Citizenship***

**b.      *Defendant Citi's Citizenship.*** Defendant Citi is a national banking association chartered under the laws of the United States with its main office in South Dakota. "All national banking associations shall, for the purposes of … actions by or against them, be deemed citizens of the States in which they are respectively located."  28 U.S.C. §1348.  A national bank is located, for diversity jurisdiction purposes, only in the state designated as its main office (and

NOTICE OF REMOVAL OF ACTION

1  not in every state where it has branch offices). *Wachovia Bank v. Schmidt*, 126 S.

2  Ct. 941, 946-52 (2006). As such, Citi is a citizen of **South Dakota**.

3         **c.** *Defendant Homeward Residential's Citizenship*. HOMEWARD

4  RESIDENTIAL, INC. is, and was at the time of filing, headquartered in Coppell,

5  Texas. As such, Homeward Residential, Inc. is a citizen of Texas.

6         **d.** *Power Default Services, Inc.* is a citizen of Texas,

7  headquartered in Irving, Texas, and incorporated in Delaware, and is an affiliate of

8  Homeward Residential, Inc. (formerly known as American Home Mortgage

9  Servicing, Inc.). As such, Power Default Services, Inc. is a citizen of Texas

10        **e.** *DOES' 1 through 40's Citizenship*

11      Upon information and belief, DOES 1 through 40 have not been named or

12 served, and thus their consent is not required. *Emrich v. Touche Ross & Co.*, 846

13 F.2d 1190, 1193 n.1 (9th Cir. 1988) (the requirement for consent applies "only to

14 defendants properly joined and served in the action."); *Salverson v. Western States

15 Bankcard Ass'n*, 731 F.2d 1423, 1428 (9th Cir. 1984).

16      Because no defendant has the same citizenship as Plaintiff, complete

17 diversity of citizenship exists.

18 **II.   AMOUNT IN CONTROVERSY**

19      In addition to diversity of citizenship, "the matter in controversy [must]

20 exceed[] the sum or value of $75,000, exclusive of interest and costs…"28 U.S.C.

21 §1332(a)(1). In the context of removal of an action based on diversity jurisdiction,

22 where the complaint does not specify a particular amount of damages -- such as in

23 the present case -- the removing defendant must show, by a *preponderance of the

24 evidence*, that the amount in controversy exceeds the statutory minimum. *Sanchez

25 v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). In other words,

26 "the defendant must provide evidence establishing that it is 'more likely than not'

27 that the amount in controversy exceeds that amount." *Id.,* accord *Saulic v.

28 Symantec Corp.,* 2007 WL 5074883 at * 2 (C.D.Cal., Dec. 26, 2007).

1        Here, although Plaintiff does not allege a specific amount of damages, the

2   Loan which is the subject of this litigation is in the amount of $2, 201,000.00. A

3   true and correct copy of the Deed of Trust is attached hereto as **Exhibit "C."** "In

4   actions seeking declaratory or injunctive relief, it is well-established that the

5   amount in controversy is measured by the value of the object of the litigation."

6   *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977); *Cohn v.*

7   *Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002).  Here, Plaintiff seeks to enjoin

8   the trustee's sale, void the foreclosure and obtain a loan modification. *See*

9   Complaint ¶18, Prayer ¶ 1-8 Therefore, Plaintiff has placed the entire amount of

10  the loan at issue.

11       In addition, Plaintiff also successful enjoined any future foreclosure sale

12  during the pendency of this litigation and must post a $50,000 bond. **Exhibit "B."**

13  Based on all of the foregoing, Defendants believe that the cost of compliance with

14  the injunction will exceed the jurisdictional minimum. Thus, the amount in

15  controversy exceeds $75,000.

16       **WHEREFORE**, the Action is hereby removed to this United States District

17  Court for the Central District of California, and Defendants pray that this District

18  Court proceed, pursuant to 28 U.S.C. §1441 and any other applicable law, as if this

19  Action had been originally filed in this District Court, and that the proceedings in

20  the State Court be stayed in all respects.

21                                Respectfully submitted,

22                                WRIGHT, FINLAY & ZAK, LLP

23  Dated:  March 11, 2013        By: _____

24                                Nicole S. Dunn, Esq.,

25                                Attorneys for Defendants, CITIBANK, N.A.
                                  AS TRUSTEE FOR AMERICAN HOME

26                                MORTGAGE ASSETS TRUST 2006-4
                                  MORTGAGE BACKED PASS-THROUGH

27                                CERTIFICATES SERIES 2006-4;
                                  HOMEWARD RESIDENTIAL, INC.;

28                                POWER DEFAULT SERVICES, INC.

**EXHIBIT "A"**

2/11/13 1:06

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

**[SEE ATTACHED]**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ORIGINAL FILED
FEB 06 2013
LOS ANGELES
SUPERIOR COURT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* LC099748 |

Northwest District, Van Nuys Courthouse East
6230 Sylmar Ave., Van Nuys, CA 91401

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mark E. Goodfriend, Esq., 16255 Ventura Blvd., # 205, Encino, CA 91436  Tel: (818) 783-8866

| DATE: | Clerk, by | , Deputy |
| *(Fecha)* | *(Secretario)* N. Winslow | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of *(specify)*:

   under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
         [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
         [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
         [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

[SEAL]

FEB 06 2013

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| EISENBERG v. CITIBANK | |

**INSTRUCTIONS FOR USE**

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER DEFAULT SERVICES, INC.; and DOES 1 through 40, inclusive

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Mark E. Goodfriend, Esq. (State Bar No. 97188)
2  Rachel S. Ruttenberg, Esq. (State Bar No. 260947)
    **LAW OFFICES OF MARK E. GOODFRIEND**
3  16255 Ventura Boulevard, Suite 205
    Encino, California 91436
4  Telephone: (818) 783-8866
    Facsimile: (818) 783-5445
5

```
ORIGINAL FILED
   FEB 08 2013
   LOS ANGELES
SUPERIOR COURT
```

6  Attorneys for Plaintiff KATHLEEN
7  ANGEL EISENBERG aka KATHLEEN ANGEL

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES

10  KATHLEEN ANGEL EISENBERG aka )  CASE NO.
11  KATHLEEN ANGEL,         )
                      )  **COMPLAINT:**
12       Plaintiff,      )            LC099748
13                    )
      vs.              )  **1.**   **FOR INJUNCTIVE RELIEF**
14                    )  **2.**   **BREACH OF CONTRACT**
    CITIBANK, N.A., AS TRUSTEE FOR )  **3.**   **UNFAIR BUSINESS**
15  AMERICAN HOME MORTGAGE )       **PRACTICES**
    ASSETS TRUST 2006-4 MORTGAGE- )  **4.**   **DECLARATORY RELIEF**
16  BACKED PASS-THROUGH )  **5.**   **DAMAGES FOR WRONGFUL**
17  CERTIFICATES SERIES 2006-4; )       **FORECLOSURE**
    HOMEWARD RESIDENTIAL, INC.;
18  POWER DEFAULT SERVICES, INC.;
19  and DOES 1 through 40, inclusive,

20       Defendants.

21  ————————————————

22

23

24

25

26

27                      1

                  COMPLAINT

Plaintiff KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL (referred to herein as "Plaintiff") alleges as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff is a resident of and doing business in the County of Los Angeles, State of California and an owner of the real Property described below.

2.     Plaintiff is informed and believes, and based thereon alleges, that Defendant CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4 ("Citibank"), is the successor in interest to America Home Mortgage, the beneficiary under the deed of trust described below, and is doing business in the County of Los Angeles, State of California, and is subject to the jurisdiction of this Court.

3.     Plaintiff is informed and believes, and based thereon alleges, that Defendant POWER DEFAULT SERVICES, INC. is a Delaware corporation, the trustee under the deed of trust described below, and is doing business in the County of Los Angeles, State of California, and is subject to the jurisdiction of this Court.

4.     Plaintiff is informed and believes, and based thereon alleges, that Defendant HOMEWARD RESIDENTIAL, INC., is a servicing agent for, and is subject to the jurisdiction of this Court.

5.     Plaintiff alleges on information and belief that, at all relevant times, each of the Defendants named herein (a) was acting by, through, under or in concert with each of the other Defendants, (b) participated in, ratified and/or is otherwise responsible for the conduct

2

COMPLAINT

of the other Defendants alleged herein, (c) is and/or was the alter ego, agent, employee, partner, joint venturer, co-adventurer, co-conspirator, successor, assign, servant, principal, master, employer, affiliate and/or associate of each of the other Defendants and, (d) in doing the things herein alleged, was acting within the course and scope of such position and/or relationship and with the knowledge, authorization and consent of each of the other Defendants.  Plaintiff is further informed and believes and based thereon alleges that each of the individual Defendants has treated each of the entity Defendants as their own alter ego and that upholding the entity to shield other Defendants from personal liability for the wrongdoing alleged herein would sanction fraud and promote injustice.

6.      The true names, capacities, and identities of the Defendants designated herein as Does 1 through 40, inclusive, are unknown to Plaintiff, at this time, who therefore sues said Defendants, and each of them, by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure.  Plaintiff will amend this Complaint to set forth their true names, capacities, and identities when ascertained.

7.      The within action is not subject to the provisions of Sections 1801, *et seq.*, or Sections 2981, *et seq.*, of the California Civil Code.

## FIRST CAUSE OF ACTION

### (Injunctive Relief Against All Defendants)

8.      Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 7, inclusive, as though fully set forth.

COMPLAINT

9.     In or about August 2012, Plaintiff and Defendants entered into a loan forebearance agreement.  Pursuant to that agreement, Plaintiff made the payments required thereunder until in or about October, when Defendants refused to accept payments.

10.     Plaintiff has fully performed all obligations on her part to be performed. Defendants have breached the parties' agreements.

11.     The wrongful conduct of Defendants, unless and until enjoined and restrained by order of this court, will cause great irreparable injury to Plaintiff in that the Property is unique and is Plaintiff's home.  Plaintiff has no adequate remedy at law for the injuries currently being suffered in that monetary damages after trial will not be sufficient in light of the unique and particular value of the Property to Plaintiff.  Plaintiff is therefore entitled to temporary, preliminary and permanent injunctive relief.

12.     Plaintiff nonetheless hereby tenders to Defendants all sums which may be due from Plaintiff to Defendants, if any, on the condition that Defendants cancel and/or rescind any Notices of Default and Sale and upon such other conditions as the court may require in connection with setting aside the trustee's sale and any trustee's deed upon sale.  Plaintiff is ready, able and willing to tender or cause to be tendered to Defendants those sums, if any, that the court finds due and owing from Plaintiff to Defendants.

## SECOND CAUSE OF ACTION

### (Damages for Breach of Contract Against All Defendants)

13.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12, inclusive, as though fully set forth.

14.     Plaintiff is entitled to monetary damages for Defendants' wrongful conduct according to proof.

### THIRD CAUSE OF ACTION

**(Unfair Business Practices Against All Defendants)**

15.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 14, inclusive, as though fully set forth.

16.     By virtue of the foregoing, Defendants have engaged in unfair, unlawful and fraudulent business practices in violation of Business & Professions Code §§ 17200 et seq. and Plaintiff is entitled to restitution and injunctive relief.

### FOURTH CAUSE OF ACTION

**(For Declaratory Relief Against All Defendants)**

17.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 16, inclusive, as though fully set forth.

18.     An actual controversy has arisen, and now exists, between Plaintiff and Defendants concerning their respective rights and duties, in that Plaintiff contends, inter alia, that a loan modification was or should have been or should be granted and that the foreclosure proceedings prosecuted by Defendant are void, voidable, unenforceable or otherwise invalid, whereas Defendants, Plaintiff is informed and believes and based thereon alleges, deny such contentions.

19.     Plaintiff desires a judicial and declaration determination of the parties' rights and duties under said their agreement. A judicial declaration is necessary and appropriate at

COMPLAINT

this time under the circumstances in order that Plaintiff and Defendants may ascertain their rights and obligations with respect to the Property.

## FIFTH CAUSE OF ACTION

### (For Damages for Wrongful Foreclosure Against All Defendants)

20.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 17, inclusive, as though fully set forth.

21.     Defendants have wrongfully and unlawfully prosecuted foreclosure proceedings upon Plaintiff's Property.

22.     As a direct and proximate result of said Defendants' wrongful conduct as alleged hereinabove, Plaintiffs have sustained and will sustain compensatory damages in an amount not yet ascertained but which Plaintiff is informed and believes and based thereon alleges exceeds $50,000.00.   Plaintiff will seek leave to amend this Complaint to allege the exact amount of his damages when the same has been finally ascertained.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     That preliminary and permanent injunctions be issued, along with a temporary restraining order.

2.     For compensatory damages in an amount as yet unascertained, but in excess of $50,000 and according to proof;

3.     For a declaration of the rights, obligations and duties of Plaintiff and Defendants;

6

COMPLAINT

4.     For an order canceling the Notices of Default and Sale and setting aside the trustee's sale;

5.     For such attorney fees as Plaintiff may be entitled to by law;

6.     For costs of suit;

7.     For applicable prejudgment interest at the maximum legal rate; and

8.     For such other and further relief as the Court may deem just and proper.

Dated: February 8, 2013    LAW OFFICES OF MARK E. GOODFRIEND

By: _____
Mark E. Goodfriend, Esq.
Rachel S. Ruttenberg, Esq.
Attorneys   for   Plaintiff   KATHLEEN   ANGEL
EISENBERG aka KATHLEEN ANGEL

7

COMPLAINT

1   Mark E. Goodfriend, Esq. (State Bar No. 97188)
    **LAW OFFICES OF MARK E. GOODFRIEND**
2   16255 Ventura Boulevard, Suite 205
    Encino, California 91436
3   Telephone: (818) 783-8866
    Facsimile: (818) 783-5445
4
    Attorneys for Plaintiff
5   ATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL

6

7         SUPERIOR COURT FOR THE STATE OF CALIFORNIA

8             FOR THE COUNTY OF LOS ANGELES

9   KATHLEEN ANGEL EISENBERG aka     CASE NO.:   LC099748
    KATHLEEN ANGEL,
10                       [PROPOSED] ORDER ON EX PARTE
         Plaintiff,             **APPLICATION**

11       vs.

12   CITIBANK, N.A., AS TRUSTEE FOR     DATE: February 8, 2013
    AMERICAN HOME MORTGAGE       TIME: 8:30 a.m.
13   ASSETS TRUST 2006-4 MORTGAGE-   DEPT: 7
    BACKED PASS-THROUGH
14   CERTIFICATES SERIES 2006-4;
    HOMEWARD RESIDENTIAL, INC.;
15   POWER DEFAULT SERVICES, INC.;
    and DOES 1 through 40, inclusive,
16
        Defendants.
17

18

19

20   _____

21

22

23   GOOD CAUSE HAVING BEEN SHOWN, IT IS HEREBY ORDERED:

24       Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME

25   MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH

26   CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER

27   DEFAULT SERVICES, INC.; and DOES 1 through 40, inclusive are ordered to appear on

28

ORIGINAL FILED

FEB 0 8 2013

LOS ANGELES
SUPERIOR COURT

                [PROPOSED] ORDER ON EX PARTE APPLICATION

1   _2/25_____, 2013 at 8:30 a.m. in Department ___T___ of the above-entitled court

2   located at 6230 Sylmar Avenue, Van Nuys, California 91401 to show cause why a

3   preliminary injunction should not issue restraining and enjoining you, your agents and

4   employees and all persons acting by, for, under or in concert with you from conducting any

5   foreclosure or trustee's sale and/or selling the property located at 25431 Prado De Las Fresas,

6   Calabasas, CA 91302-3660.

7          Pending the hearing on the Order to Show Cause, or further order of the court,

8   Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE

9   ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES

10  SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER DEFAULT SERVICES,

11  INC.; and DOES 1 through 40, inclusive, their agents and all persons acting by, for, under or

12  in concert with any of them are enjoined from conducting any foreclosure or trustee's sale

13  and/or selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

14         This Order and all moving papers submitted in support of Plaintiff's Motion for a

15  Preliminary Injunction shall be personally served on counsel for Defendants personally or by

16  overnight delivery delivered by February 11, 2013. _and by e/mail on 2/8/13._

17         Any opposition papers shall be filed and served, ~~personally~~ _by e/mail_ or by fax, by 4:30 p.m. on

18  _2/18_____, 2013. Any reply papers shall be filed and served, ~~personally~~ _by e/mail_ or by fax, by

19  4:30 p.m. on _2/21_____, 2013.

20         Proof of service to be filed on or before February ~~14~~ 22, 2013.

21

22

23

24  DATED: February 8, 2013

25                                      JUDGE OF THE SUPERIOR COURT

26                                      JAMES A. KADDO

27                                              2

28  _____
    [PROPOSED] ORDER ON EX PARTE APPLICATION

1  Mark E. Goodfriend, Esq. (State Bar No. 97188)
   Rachel S. Ruttenberg, Esq. (State Bar No. 260947)
2  **LAW OFFICES OF MARK E. GOODFRIEND**
   16255 Ventura Boulevard, Suite 205
3  Encino, California 91436
   Telephone:  (818) 783-8866
4  Facsimile:  (818) 783-5445

5  Attorneys for Plaintiff
   KATHLEEN ANGEL EISENBERG
6  aka KATHLEEN ANGEL

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10 KATHLEEN ANGEL EISENBERG aka     CASE NO.:        L C 0 9 9 7 4 8
   KATHLEEN ANGEL,
11                                  (1)    **EX PARTE APPLICATION FOR**
                 Plaintiff,                **TEMPORARY RESTRAINING**
12                                         **ORDER AND ORDER TO SHOW**
          vs.                              **CAUSE RE: PRELIMINARY**
13                                         **INJUNCTION;**
   CITIBANK, N.A., AS TRUSTEE FOR
14 AMERICAN HOME MORTGAGE          (2)     **MEMORANDUM OF POINTS**
   ASSETS TRUST 2006-4 MORTGAGE-           **AND AUTHORITIES IN**
15 BACKED PASS-THROUGH                     **SUPPORT THEREOF**
   CERTIFICATES SERIES 2006-4;
16 HOMEWARD RESIDENTIAL, INC.;    **[DECLARATIONS OF KATHLEEN**
   POWER DEFAULT SERVICES, INC.;  **ANGEL EISENBERG AND RACHEL S.**
17 and DOES 1 through 40, inclusive,  **RUTTENBERG, ESQ. FILED**
                                    **CONCURRENTLY HEREWITH]**
18                Defendants.

19                                  DATE: February 8, 2013
                                    TIME: 8:30 a.m.
20 _____ DEPT: I

21

22

23

24

25

26

27                                 1

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    Pursuant to California Code of Civil Procedure Section 526, Plaintiff KATHLEEN

3  ANGEL EISENBERG aka KATHLEEN ANGEL ("Plaintiff") hereby applies ex parte (a) for

4  an order that Defendants show cause at or before a hearing set by the Court why they and all

5  of their agents, employees, representatives and persons acting under, for or in concert with

6  them ("Defendants"), should not be enjoined from selling the below-described Property; and

7  (b) pending such hearing, for a Temporary Restraining Order ("TRO") enjoining Defendants,

8  from selling the real property located at 25431 Prado De Las Fresas, Calabasas, CA

9  91302-3660 (the "Property").

10    Ex parte relief is necessary because a Trustee Sale is scheduled for February 11, 2013,

11  at 9:00 a.m. and despite assurances from Defendants that they would place the sale "on hold"

12  until a forbearance, loan modification and/or payment plan was worked out to resolve any and

13  all outstanding arrearages on Plaintiff's mortgage, Defendants have failed and refused to do

14  so.

15    The application is made on the grounds that monetary compensation would not afford

16  adequate relief for the loss of Plaintiff's property, and that great and irreparable injury will

17  result to Plaintiff before the matter can be heard on notice.

18    The Application is further supported by the attached Declarations of Kathleen Angel

19  Eisenberg and Rachel S. Ruttenberg, Esq. filed concurrently herewith, the Memorandum of

20  Points and Authorities attached hereto, the pleadings and records filed concurrently herewith

21  and on file, such matters as the court may take judicial notice of and such other oral and

22  documentary evidence as the Court may entertain at the hearing on this matter.

23  Dated: February 8, 2013   LAW OFFICES OF MARK E. GOODFRIEND

24            By

25            Mark E. Goodfriend
          Rachel S. Ruttenberg, Attorneys for Plaintiff

26            KATHLEEN ANGEL EISENBERG

27                2

28    EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
    RE: PRELIMINARY INJUNCTION; DECLARATIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff brings this ex parte application for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction related to a Trustee Sale currently scheduled for February 11, 2013, at 9:00 a.m. despite assurances from Defendants that foreclosure proceedings would be halted until Plaintiff is provided with a reasonable opportunity to reach a payment arrangement to satisfy the arrearages on the loan and Defendants' failure to provide her with that opportunity.

Specifically, in or about August 2012, Defendants entered into a written forbearance agreement with Plaintiff, pursuant to which Plaintiff was to make three monthly payments. It was understood by Plaintiff, by the representations of Defendants, that after the three payments were completed on time, Defendants would enter into a permanent forbearance, similar to the August 2012 Agreement. Plaintiff made two timely payments for August and September 2012. Unbeknownst to Plaintiff, on August 30, 2012, Defendants breached the forbearance agreement, conducting a foreclosure sale during the forbearance period. However, Plaintiff learned of the sale after she made the September payment and in fact the payment was credited to her account. Thereafter, in or about October 2012, Defendants refused to accept the balance of the payments due thereunder. Defendants subsequently acknowledged their error and rescinded the sale, and although they also agreed in principle to put any sale on hold pending working out a new arrangement, Defendants have still failed and refused to do so, and a sale is now imminent.

Plaintiff is thus entitled to a temporary restraining order and preliminary injunction because under the test for preliminary injunction applicable under state law, there is a high probability of success and likelihood of injury and the balance of hardships tips sharply in favor of Plaintiff.

### II. STATEMENT OF FACTS

1

1    The facts are set forth in the attached declarations of Kathleen Angel Eisenberg and

2 Rachel S. Ruttenberg filed concurrently herewith and are as follows:

3    Plaintiff KATHLEEN ANGEL EISENBERG ("Plaintiff") owns the property located

4 at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 (the "Property"). On or about

5 August 7, 2012, Plaintiff and Defendant Homeward Residential, Inc. ("Lender") entered into

6 a Forbearance Agreement (the "Agreement") whereby "Lender is willing to postpone or

7 forbear from initiating any Foreclosure Proceedings." See Forbearance Agreement,

8 unnumbered ¶ 6, a true and correct copy of which is attached hereto as Exhibit "1." Pursuant

9 to the terms of the Agreement, Plaintiff "shall begin making monthly forbearance payments

10 of 14033 and 08/100 Dollars ($ 14033.08) beginning the 8 day of August, 2012 and

11 continuing on the same day of each subsequent month until 10/08/12." See Exhibit "1"

12 numbered ¶ 4. Defendants informed and advised Plaintiff that upon completion of the

13 Agreement and receipt of three timely payments thereunder, a Permanent Forbearance

14 Agreement would take effect, which would be similar to the August 2012 Agreement.

15    Pursuant to the Agreement, Plaintiff made two payments of $14,033.08 to Lender. The

16 first payment was made on August 7, 2012 by a cashier's check drawn off of Plaintiff's Bank

17 of America account via overnight mail to Lender, which was subsequently credited to her

18 account with Lender on August 13, 2012. The second payment was made on September 5,

19 2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight

20 mail to Lender, which was subsequently credited to her account with Lender on September

21 14, 2012. See Exhibit "2" for true and correct copies of the Bank of America cashier's checks

22 in addition to Lender's Customer Account Activity Statement demonstrating when Plaintiff's

23 payments were credited to her account.

24    Unbeknownst to Plaintiff, a Trustee's Sale was held August 30, 2012, which resulted

25 in the recording of a Trustee's Deed Upon Sale on September 18, 2012, as instrument number

26 20121400719. See Exhibit "3" for a true and correct copy of Trustee's Deed Upon Sale.

27                                                2

1  Plaintiff first became aware that the Property was sold in a foreclosure sale after remitting the

2  second forbearance payment pursuant to the Agreement. Upon learning of the sale, Plaintiff's

3  husband immediately telephoned Plaintiff direct contact at Homeward Residential, Henry

4  Cruz, and Natalie Gold at Fidelity National Title Company to discuss the unlawful sale and

5  demanded the sale be rescinded pursuant to the Agreement prohibiting Defendants from

6  foreclosing on the Property. From approximately in or about the second week of September

7  2012 forward, Plaintiff and her husband contacted Defendants on a weekly basis trying to

8  obtain updates on the status of the rescission.

9       On or about October 17, 2012, Plaintiff received proof from Fidelity that the sale was

10  rescinded pursuant to a Notice of Rescission of Trustee's Deed Upon Sale recorded as

11  instrument number 20121462963. See Exhibit "4" for a true and correct copy of Notice of

12  Rescission of Trustee's Deed Upon Sale. On or about October 25, 2012, Mr. Cruz from

13  Homeward could not confirm the who held title to the Property.

14       On or about November 4, 2012, Mr. Cruz confirmed in writing that the sale was

15  rescinded and that the "2nd installment under the three month stipulated repayment plan" was

16  received. Subsequently, on November 9, 2012, Mr Cruz contacted Plaintiff's husband via

17  email to discuss a "payment arrangements."

18       Pursuant to the Agreement, Plaintiff attempted to make the third forbearance payment

19  but the Lender would not accept the payment. On or about November 27, 2012, Plaintiff first

20  learned that the Forbearance Agreement, which was previously entered into on August 7,

21  2012, was no longer available to her but the lender was still willing to work out a payment

22  arrangement and/or loan modification to resolve the arrearages on the loan.

23       On December 3, 2012, Plaintiff's husband contacted the Lender regarding the sale

24  scheduled for December 6, 2012, requesting that it place the sale on hold as promised. Later

25  that day, Mr. Cruz confirmed that the foreclosure sale was placed on hold. Subsequently, on

26  January 2, 2013, Plaintiff's husband contacted the Lender regarding the sale scheduled for

27  3

28  EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION; DECLARATIONS

1    January 7, 2013, requesting that the sale be placed hold as previously promised "until we

2    resolve the issues." Again, later that day, Mr. Cruz responded stating that he "made a request

3    to postpone [the] foreclosure sale for another 30 days."

4         Currently, a trustee sale is scheduled to take place on February 11, 2013, at 9:00 a.m.

5    pursuant to a notice of sale recorded as instrument number 20121661635 on November 1,

6    2012. Despite ongoing negotiations with Defendants regarding a forbearance, loan

7    modification and/or payment arrangements to resolve any and all arrearages on the loan

8    related to the Property.

9         Plaintiff and her husband, David Eisenberg, have been in constant communication with

10   Defendants since in or about early August 2012 regarding same, and just learned this

11   afternoon, February 7, 2013, at approximately 12:10 p.m. that Defendants are failing and

12   refusing to enter into a loan modification and/or payment plan despite prior promises to do

13   so and after contacting Defendants at least 10 times in the last month alone in hopes of

14   obtaining a resolution to same. Plaintiff mistakenly believed, according to the Lender's

15   general practice, that Mr. Cruz would confirm that the sale scheduled for February 11, 2013

16   was on hold until she finalized a payment arrangement with the Lender.

17        On or about January 15 and 30, 2013, Plaintiff's husband left voicemails for Mr. Cruz

18   which went unreturned, relating finalizing a payment arrangement. On February 3, 2013,

19   Plaintiff's husband emailed regarding putting the sale on hold and received no response. He

20   followed up the next day, February 4, 2013, with a voicemail to Mr. Cruz regarding same and

21   received no return call. On February 5, 2013, Plaintiff's husband emailed and left a voicemail

22   for Mr. Cruz and received no response. On February 6, 2013, Plaintiff and her husband left

23   a combined 3 voicemails for Mr. Cruz and Plaintiff's husband wrote Mr. Cruz another email.

24   On February 7, 2013, at or before 8:10 a.m. Plaintiff's husband left several voicemails from

25   Mr. Cruz and faxed him an urgent request asking for confirmation that the same was

26   postponed without any response. By 10:00, Plaintiff's husband contacted Lender and spoke

27                                              4

28        EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
               RE: PRELIMINARY INJUNCTION; DECLARATIONS

1  with "Pat" at extension 21258 and requested that Pat have Mr. Cruz contact him immediately.

2  At approximately 12:10 p.m. Mr. Cruz, for the first time since the beginning of January 2013,

3  contacted Plaintiff regarding the trustee sale scheduled for February 11, 2013 and advised that

4  the sale would go forward as scheduled and was no longer "on hold." During the

5  aforementioned conversation, Plaintiff's husband requested to speak with a supervisor and

6  was advised by Mr. Cruz that a supervisor would contact them by days end, which never

7  happened.

8  **III.    ARGUMENT**

9  **A.    Plaintiff Is Entitled To a TRO and Order to Show Cause Why Preliminary**

10  **Injunction Should Not Issue Pending a Hearing On the OSC Re**

11  **Preliminary Injunction**

12  California Code of Civil Procedure Section 527(c) permits a court to issue a temporary

13  restraining order and order to show cause why a preliminary injunction should *not* issue --

14  without the statutory notice -- where the plaintiff demonstrates great or irreparable injury will

15  occur before the hearing on notice and that the plaintiff (or her counsel) provided the notice

16  required pursuant to C.C.P. § 527(c)(2).   C.C.P. § 527(c) sets forth the following

17  requirements for a TRO:

18  "(1) [That] [i]t appears from facts shown by affidavit or by the verified
19  complaint that great or irreparable injury will result to the applicant before the
    matter can be heard on notice.
20  (2) The applicant or the applicant's attorney certifies one of the following to the
    court under oath:
21  (A) That within a reasonable time prior to the application the applicant
    informed the opposing party or the opposing party's attorney at what time and
22  where the application would be made.
    (B) That the applicant in good faith attempted but was unable to inform the
23  opposing party and the opposing party's attorney, specifying the efforts made
    to contact them.
24  (C) That for reasons specified the applicant should not be required to so inform
    the opposing party or the opposing party's attorney."

25  Each of these requirements is met here.

26

27                                          5

28

1.  **Plaintiff Is Likely To Succeed On The Merits Of Their Claims**

On or about August 7, 2012, Plaintiff and Defendant Homeward Residential, Inc. ("Lender") entered into a Forbearance Agreement (the "Agreement") that permitted forbearance payments from August-October 2012. Despite having received on time payments from Plaintiff for August and September 2012, Defendant foreclosed on Plaintiff's property in direct breach of the Agreement. After the sale was finally rescinded, the Lender was no longer willing to accept payments pursuant to the Agreement, enter into a further Forbearance Agreement nor enter into a payment arrangement despite promises to do so for the purpose of curing the arrearages on the loan.

The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court. "A trial court will be found to have abused its discretion only when it has 'exceeded the bounds of reason or contravened the uncontradicted evidence.'" ReadyLink Healthcare v. Cotton (2005) 126 Cal.App.4th 1006, 1016.

In exercising that discretion, the court should evaluate two interrelated factors: (1) the likelihood that the moving party will prevail on the merits at trial, and (2) the interim harm that the moving party is likely to sustain if the injunction were denied as compared to the harm that the opposing party is likely to suffer if the preliminary injunction were issued. Nutro Products, Inc. v. Cole Grain Co. (1992) 3 Cal.App.4th 860, 865. "A trial court should grant a preliminary injunction only if the plaintiff shows a 'reasonable probability' that he would prevail at trial and would suffer more harm from a denial than the defendant would suffer from its grant." Scaringe v. J. C. C. Enterprises, Inc. (1988) 205 Cal.App.3d 1536, 1542-43. See *also* code Civ. Proc. §§526, 527.

2.  **Unless A Temporary Restraining Order Is Issued, The Court's Ultimate Judgment For Plaintiff Will Be Ineffectual.**

California Code of Civil Procedure, § 526(a)(3) provides that the Court may enjoin any acts by a defendant which would render ineffectual an ultimate judgment against that

6

1  defendant.  If Defendants are permitted to evict Plaintiff, she and her husband will lose their
2  home and literally be on the streets.  An order restraining Defendants from foreclosing on
3  theProperty is the only adequate way for this Court to issue an effective final judgment in this
4  case.

### 3. A Balancing of The Plaintiff's Interests With Alonso's Rights Mandates The Issuance of a Preliminary Injunction

7  In determining whether to issue a Preliminary Injunction, the Court does not decide
8  the merits, but balances the equities involved in a particular case.  The Court should consider
9  which party to the litigation will bear the greater injury if the injunction is not granted and the
10 reasonable probability that the Plaintiff will ultimately prevail on the merits.  State Board of
11 Barber's Examiners v. Star (1970) 9 Cal.3d 736.

12 In balancing the equities, the Court should consider:

13 "...whether a greater injury will result to the Defendant from granting the
   injunction than to Plaintiff from refusing it..... In the last analysis, the trial
14 Court must determine which party is the more likely to be injured by the
   exercise of its discretion [citation] and it must then be exercised in favor of that
15 party [citation]."

16 Continental Baking Co. v. Katz (1968) 68 Cal.2d 512, 528.

17 Plaintiff, whose claims are likely to succeed, will suffer irreparable injury if Alonso
18 continues to collect rents, as such rents will be dissipated and become unrecoverable.

### 4. Plaintiff Will Be Irreparably Harmed If Alonso Is Not Restrained

20 Plaintiff has no adequate remedy at law and will suffer further irreparable injury unless
21 a temporary restraining order is issued.  In order to prevent irreparable injury to him, Plaintiff
22 requests that this Court immediately enjoin Defendants from unlawfully foreclosing the
23 Property.

### 5. Plaintiff Has Provided The Requisite Notice For a TRO and OSC Re Preliminary Injunction

26 As stated in the Declaration of Rachel S. Ruttenberg, Plaintiff has provided reasonable

27                                              7

28 EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
   RE: PRELIMINARY INJUNCTION; DECLARATIONS

1  notice of the application for a Temporary Restraining Order and OSC regarding Preliminary

2  Injunction.  (Ruttenberg Decl., ¶ 2).

3  **B.    Granting The Requested Relief Will Cause No Hardship**

4  In stark contrast to Plaintiff, Defendants will suffer no harm if this Court grants

5  Plaintiff's request for a TRO/preliminary injunction.  Moreover, the court could impose

6  reasonable conditions on such relief during the pendency of any injunction.  The relative

7  hardships clearly weigh in Plaintiff's favor, and this court should therefore grant Plaintiff's

8  application and enjoin Defendants from misappropriating any further rents.

9  **C.    The Status Quo Must Be Maintained Until a Final Determination on The**

10  **Merits**

11  It has long been the rule in California that the status quo must be maintained until a

12  final determination on the merits of the action when required at a preliminary injunction.

13  Continental Baking Co. v. Katz (1968) 68 Cal.2d 512, 528; and People v. Black's Food Store

14  (1940) 16 Cal.2d 59, 62.  This is as a matter of law.  Stockton v. Newman (1957) 148

15  Cal.App.2d 558, 563.

16  Plaintiff has satisfied the requirements for obtaining a temporary restraining order and

17  relief.  Additionally, Plaintiff should prevail on the OSC re: Preliminary Injunction.  For these

18  reasons, Plaintiff is  entitled to an injunction.  To that end a trial court 'must exercise its

19  discretion 'in favor of the party most likely to be injured." Nutro Products, Inc. V. Cole Grain

20  Co. (1992) 3 Cal.App.4th 860, 867.

21  "The concept of irreparable injury' which authorizes the interposition of a court of

22  equity by way of injunction does not concern itself entirely with injury beyond the possibility

23  of repair or beyond possible compensation in damages. Rather, by definition, an injunction

24  properly issues in any case where 'it would be extremely difficult to ascertain the amount of

25  compensation which would afford adequate relief.'" Wind v. Herbert (1960) 186 Cal.App.2d

26  276, 285. Additionally, the fact that "only money is involved. Mitsui Manufacturers Bank v.

27  8

28
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION; DECLARATIONS

1   Texas Commerce Bank-Fort Worth (1984) 159 Cal.App.3d 1051, 1059.

2   **IV.    CONCLUSION**

3          Based on the foregoing, Plaintiff respectfully requests that the Court grant this

4   application for a temporary restraining order and issue an order to show cause regarding a

5   preliminary injunction enjoining Defendants from, inter alia, collecting rents.

6   Dated: February 8, 2013          LAW OFFICES OF MARK E. GOODFRIEND

7

8                                    By: _____
                                     Mark E. Goodfriend
9                                    Rachel S. Ruttenberg, Attorneys for Plaintiff
                                     KATHLEEN ANGEL EISENBERG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                           1

## DECLARATION OF KATHLEEN ANGEL EISENBERG

I, Kathleen Angel Eisenberg, declare:

1.　　I am the Plaintiff in this action and I have personal knowledge of the facts stated herein, and if called as a witness, would and could competently testify thereto. I make this declaration in support of the application for an Order to Show Cause and Temporary Restraining Order filed concurrently herewith.

2.　　I own the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 (the "Property"). On or about August 7, 2012, myself and Homeward Residential, Inc. ("Lender") entered into a Forbearance Agreement (the "Agreement") whereby "Lender is willing to postpone or forbear from initiating any Foreclosure Proceedings." See Forbearance Agreement, unnumbered ¶ 6, a true and correct copy of which is attached hereto as Exhibit "1." Pursuant to the terms of the Agreement, I "shall begin making monthly forbearance payments of 14033 and 08/100 Dollars ($ 14033.08) beginning the 8 day of August, 2012 and continuing on the same day of each subsequent month until 10/08/12." See Exhibit "1" numbered ¶ 4. Defendants told me and my husband that upon completion of the Agreement and receipt of three timely payments thereunder, a Permanent Forbearance Agreement would take effect, which would be similar to the August 2012 Agreement.

3.　　Pursuant to the Agreement, I made two payments of $14,033.08 to Lender. The first payment was made on August 7, 2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight mail to Lender, which was subsequently credited to her account with Lender on August 13, 2012. The second payment was made on September 5, 2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight mail to Lender, which was subsequently credited to her account with Lender on September 14, 2012. See Exhibit "2" for true and correct copies of the Bank of America cashier's checks in addition to Lender's Customer Account Activity Statement demonstrating when my

2

1  payments were credited to her account.

2      4.    Unbeknownst to me, a Trustee's Sale was held August 30, 2012, which resulted
3  in the recording of a Trustee's Deed Upon Sale on September 18, 2012, as instrument number
4  20121400719. See Exhibit "3" for a true and correct copy of Trustee's Deed Upon Sale. I first
5  became aware that the Property was sold in a foreclosure sale after remitting the second
6  forbearance payment pursuant to the Agreement.

7      5.    Upon learning of the sale, my direct contact at Homeward Residential, Henry
8  Cruz, and Natalie Gold at Fidelity National Title Company to discuss the unlawful sale and
9  demand the sale be rescinded pursuant to the Agreement prohibiting Defendants from
10 foreclosing on the Property. From approximately in or about the second week of September
11 2012 forward, myself and my husband contacted Defendants on a weekly basis trying to
12 obtain updates on the status of the rescission.

13     6.    On or about October 17, 2012, I received proof from Fidelity that the sale was
14 rescinded pursuant to a Notice of Rescission of Trustee's Deed Upon Sale recorded as
15 instrument number 20121462963. See Exhibit "4" for a true and correct copy of Notice of
16 Rescission of Trustee's Deed Upon Sale. On or about October 25, 2012, Mr. Cruz from
17 Homeward could not confirm the who held title to the Property.

18     7.    On or about November 4, 2012, Mr. Cruz confirmed in writing that the sale was
19 rescinded and that the "2nd installment under the three month stipulated repayment plan" was
20 received. Subsequently, on November 9, 2012, Mr Cruz contacted my husband via email to
21 discuss a "payment arrangements." See Exhibit "5" for a true and correct copies of emails
22 between Plaintiff and her husband on the one hand and Defendants on the other.

23     8.    Pursuant to the Agreement, I attempted to make the third forbearance payment
24 but the Lender would not accept the payment. On or about November 27, 2012, I first learned
25 that the Forbearance Agreement, which was previously entered into on August 7, 2012, was
26 no longer available to me but the lender was still willing to work out a payment arrangement

27                      3

1 | and/or loan modification to resolve the arrearages on the loan.

2 |   9. On December 3, 2012, my husband contacted the Lender regarding the sale

3 | scheduled for December 6, 2012, requesting that it place the sale on hold as promised. Later

4 | that day, Mr. Cruz confirmed that the foreclosure sale was placed on hold. Subsequently, on

5 | January 2, 2013, my husband contacted the Lender regarding the sale scheduled for January

6 | 7, 2013, requesting that the sale be placed hold as previously promised "until we resolve the

7 | issues." Again, later that day, Mr. Cruz responded stating that he "made a request to postpone

8 | [the] foreclosure sale for another 30 days."

9 |   10. Currently, a trustee sale is scheduled to take place on February 11, 2013, at 9:00

10 | a.m. pursuant to a notice of sale recorded as instrument number 20121661635 on November

11 | 1, 2012. Despite ongoing negotiations with Defendants regarding a forbearance, loan

12 | modification and/or payment arrangements to resolve any and all arrearages on the loan

13 | related to the Property.

14 |   11. Myself and my husband, David Eisenberg, have been in constant

15 | communication with Defendants since in or about early August 2012 regarding same, and just

16 | learned this afternoon, February 7, 2013, at approximately 12:10 p.m. that Defendants are

17 | failing and refusing to enter into a loan modification and/or payment plan despite prior

18 | promises to do so and after contacting Defendants at least 10 times in the last month alone in

19 | hopes of obtaining a resolution to same. I mistakenly believed, according to the Lender's

20 | general practice, that Mr. Cruz would confirm that the sale scheduled for February 11, 2013

21 | was on hold until we finalized a payment arrangement with the Lender.

22 |   12. On or about January 15 and 30, 2013, my husband left voicemails for Mr. Cruz

23 | which went unreturned, relating finalizing a payment arrangement. On February 3, 2013, my

24 | husband emailed regarding putting the sale on hold and received no response. He followed

25 | up the next day, February 4, 2013, with a voicemail to Mr. Cruz regarding same and received

26 | no return call. On February 5, 2013, my husband emailed and left a voicemail for Mr. Cruz

27 |                         4

28 | EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION; DECLARATIONS

1   voicemails for Mr. Cruz and my husband wrote Mr. Cruz another email. On February 7, 2013,

2   at or before 8:10 a.m. my husband left several voicemails from Mr. Cruz and faxed him an

3   urgent request asking for confirmation that the same was postponed without any response. By

4   10:00, my husband contacted Lender and spoke with "Pat" at extension 21258 and requested

5   that Pat have Mr. Cruz contact him immediately. At approximately 12:10 p.m. Mr. Cruz, for

6   the first time since the beginning of January 2013, contacted myself or my husband regarding

7   the trustee sale scheduled for February 11, 2013 and advised that the sale would go forward

8   as scheduled and was no longer "on hold." During the aforementioned conversation, my

9   husband requested to speak with a supervisor and was advised by Mr. Cruz that a supervisor

10  would contact them by days end, which never happened. See Exhibit "5."

11      I declare under penalty of perjury under the laws of the United States of America and

12  the State of California that the foregoing is true and correct.

13      Executed on February 8, 2013 at Los Angeles County, California.

14

15

16  KATHLEEN ANGEL EISENBERG

17

18

19

20

21

22

23

24

25

26

27                                5

## DECLARATION OF RACHEL S. RUTTENBERG

I, Rachel S. Ruttenberg, declare:

1.      I am counsel for Plaintiff KATHLEEN ANGEL EISENBERG and have personal knowledge of the facts stated herein, and if called as a witness, would and could competently testify thereto. I make this declaration in support of the application for an Order to Show Cause and Temporary Restraining Order filed concurrently herewith.

2.      On February 7, 2013, at 4:57 p.m., my colleague, Mark E. Goodfriend, gave ex parte notice by telephone to Fidelity, and left a message with Natalie Gold's associate that Plaintiff would be moving ex parte on February 8, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

3.      On February 7, 2013, at 4:59 p.m., I also gave ex parte notice by telephone to Homeward by leaving a voicemail on Mr. Cruz extension that Plaintiff would be moving ex parte on February 8, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

4.      Additionally, on February 5, 2013, at 5:05 p.m., I further gave notice to Mr. Cruz and Ms. Gold via email, a true and correct copy of which is attached hereto as Exhibit "6," that Plaintiff would be moving ex parte on February 1, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

5.      I was unable to complete notice prior to 10:00 a.m. because Plaintiff was not informed and advised of Defendants' intention to proceed with the sale until after 12:00 p.m. on February 7, 2013. I was subsequently contact by Plaintiff in the afternoon and did not meet with until approximately 4:40 p.m., which is when I was retained. I acted promptly thereafter to advise Defendants, that confirmed receipt of my notice of this application at approximately

6

1  6:45 p.m. yesterday to Plaintiff, who was still in my office at the time.

2      I declare under penalty of perjury under the laws of the United States of America and

3  the State of California that the foregoing is true and correct.

4      Executed on February 8, 2013 at Los Angeles County, California

5

6                Rachel S. Ruttenberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                7

HOMEWARD          8/7/2012 1:07:40 PM   PAGE   1/002   Fax Server

Agreement

## FORBEARANCE AGREEMENT

Loan Number : 0031284599

This Forbearance Agreement ("Agreement") is made and entered into on 08/07/12 , by and between Homeward Residential, Inc.("Lender") and KATHLEEN EISENBERG (whether one or more, "Borrower").

WHEREAS, Borrower executed that certain promissory note ("Note"), dated 07/24/2006, in the original principal amount of $229,000.00 , and secured by a mortgage, deed of trust, or deed to secure debt of even date therewith ("Security Instrument", covering the premises commonly known as 25451 PRADO DE LAS FRESAS CALABASAS CA 91302 ("Property"), the Note and Security Instrument being collectively referred to herein as the "Loan" and

WHEREAS, Borrower has defaulted in making payments under the Loan ("Default") and currently is unable to remedy such default by paying all amounts currently due but unpaid pursuant to the Loan; and

WHEREAS, as a result of the Default, judicial or non-judicial foreclosure proceedings have been initiated or will be initiated by or on behalf of Lender against the Property in order to collect the sums due and payable pursuant to the Loan ("Foreclosure Proceeding"):

WHEREAS, Borrower desires to postpone to prevent the Foreclosure Proceedings; and

WHEREAS, Lender is willing to postpone or forbear from initiating any Foreclosure Proceeding in accordance with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the adequacy and receipt of which is acknowledged by Borrower and Lender, Borrower and Lender agree as follows:

1. That the above recitals are true and correct and incorporated herein for all purposes by reference.

2. That Lender will suspend or forbear from initiating any Foreclosure Proceeding upon receipt and acceptance of this Agreement, fully executed by Borrower, and a certified check in the amount of 14033 and 08/100 Dollars ($14033.08) made payable to Lender ("Initial Payment"). Any sale scheduled with regard to any existing Foreclosure Proceeding will be cancelled by Lender but the Foreclosure Proceeding will not be dismissed until the Default has been fully cured and all amounts then presently due and unpaid pursuant to the Loan have been paid

3. The Initial Payment and this Agreement, fully executed by Borrower, must be received by Lender by August 13, 2012 , or this Agreement shall have no force or effect. Until such receipt and acceptance, no action will be taken by Lender to cease collection activities, including postponement of any scheduled sale pursuant to any existing Foreclosure Proceeding. This Agreement shall not be considered as 'received and accepted' by Lender until it has been internally date stamped by Lender.

4. Borrower shall begin making monthly forbearance payments of 14033 and 08/100 Dollars ($ 14033.08), beginning the 8 day of August, 2012 and continuing on the same day of each subsequent month until 10/08/12 ("Expiration of the Forbearance") at which time Borrower must fully cure the Default by paying all amounts then presently due and unpaid pursuant to the Loan. If, upon the Expiration of the Forbearance, Borrower is unable to fully cure the Default, Lender shall consider the Borrower and Loan for any available and appropriate foreclosure prevention option ("Foreclosure Prevention Option") in accordance with Lender's then current policies and procedures. Borrower acknowledges that Lender has not guaranteed or assured and hereby does not guarantee and assure Borrower that Borrower and the Loan will qualify or be accepted by Lender for any Foreclosure Prevention Option.

5. All of Borrower's rights and responsibilities under, and all of the terms and conditions of the Note and Security Instrument, shall remain in full force and effect, except as expressly modified by this Agreement. Nothing contained in this Agreement shall be construed to impair the Security Instrument or affect or impair Lenders' rights or powers under the Loan to recover any sum due pursuant to the Loan, except as expressly modified by this Agreement.

6. In the event of default under this Agreement or in the event Borrower and the Loan do not qualify for any Foreclosure Prevention Option upon the Expiration of the Forbearance, Borrower agrees: (a) that normal collection activities may be resumed by Lender, including without limitation the resumption of any foreclosure sale pursuant to any existing Foreclosure Proceeding or the initiation of any new Foreclosure Proceeding; and (b) that the Loan has been accelerated properly, that no further acceleration is required, and that any existing Foreclosure Proceeding, or any foreclosure sale previously scheduled, may continue without further notice, except as otherwise required by applicable law.

Forbearance Agreement                                        Revised 04-27-2011                        1


Exhibit 1

7. Until such time as the Default is fully cured and all amounts due and unpaid pursuant to the Loan have been paid, the Loan remains delinquent and Lender may continue to report the Loan as delinquent to any credit reporting agency.

8. Regardless of whether Borrower makes payments pursuant to this Agreement, interest payable under the Note shall continue to accrue as provided in the Note. In the event the Loan has an adjustable rate feature, any adjustments to the interest rate and any corresponding adjustment to the monthly payment due under the Note may be made by Lender.

9. All payments made by Borrower pursuant to this Agreement shall be applied to the Loan as provided in the Loan.

10. Acceptance of funds pursuant to this Agreement shall constitute neither a waiver of any default nor a waiver of acceleration of the Loan in default.

11. This Agreement shall not constitute a reinstatement of the Loan.

12. Time is of the essence.

13. This Agreement constitutes the only agreement between Borrower and Lender with regard to the Default. All written and oral agreements entered into by Borrower and Lender prior to this Agreement shall be deemed to be void and of no further effect.

14. Borrower acknowledges that Borrower has been afforded the opportunity by Lender to seek legal counsel with regard to this Agreement.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed as of the date first above written.

_Kathleen Gayel Eisenberg 8.7.18_
Borrower:

_____
Borrower:

USPS.com® - Track & Confirm

English     Customer Service     USPS Mobile                                    Register / Sign In

# USPS.COM

Search USPS.com or Track Packages

Quick Tools          Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

## Track & Confirm

GET EMAIL UPDATES     PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| EG976214371US | Express Mail® | Arrival at Post Office | September 07, 2012, 9:15 am | COPPELL, TX 75019 | Guaranteed By: September 6, 2012, 3:00 PM<br>Proof of Delivery |
| | | Processed through USPS Sort Facility | September 07, 2012, 6:17 am | COPPELL, TX 75099 | |
| | | Processed through USPS Sort Facility | September 05, 2012, 4:57 pm | VAN NUYS, CA 91406 | |
| | | Acceptance | September 05, 2012, 12:34 pm | CALABASAS, CA 91302 | |

### Check on Another Item

What's your label (or receipt) number?

Find

LEGAL
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

ON USPS.COM
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

ON ABOUT.USPS.COM
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

OTHER USPS SITES
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2012 USPS. All Rights Reserved.

---

| Bank of America | Cashier's Check | No. 000646353 |
|---|---|---|

Notice to Purchaser: In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Date    SEPTEMBER 11, 2012                    91-170/1221
                                               NAZ

Banking
Center     EL CAMINO CENTRE

   0008435  0000   S0006646252        KATHY ANGEL

                              Remitter (Purchased By)

                                                    $   **14,033.08**

Pay
To
The         **FOURTEEN THOUSAND THIRTY THREE DOLLARS AND    08/100**
Order
Of          **HIGHLAND RESIDENTIAL**
            **MORTGAGE CORPORATION**

                                              Non-Negotiable

                              Authorized Signature

Bank of America, N.A.          VOID AFTER 90 DAYS
Phoenix, AZ

Customer Copy          457022259767
Retain For Your Records

Exhibit 2
9/7/2012



```
                    HOMEWARD RESIDENTIAL, INC.
                     1525 SOUTH BELT LINE ROAD
                        COPPELL, TX 75019

                  TELEPHONE NO.:  1-877-304-3100

               CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 12/03/12
REQ BY BH7                                                    PAGE   2


KATHLEEN ANGEL EISENBERG
LOAN NUMBER: 0031284599

                    ACTIVITY FOR PERIOD 01/01/10 - 12/01/12
PROCESS    DUE    TRANSACTION            TRANSACTION
DATE       DATE   CODE                   DESCRIPTION                  EFFECTIVE DATE
                                                                     OF TRANSACTION
-----------------------------------------------------------------------------------
  TRANSACTION    PRIN. PAID/        ESCROW PAID/  -----------OTHER------------
   AMOUNT         BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------------
10-17-12  00-00  632  STATUTORY EXPENSES
        21.00        0.00        0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
        35.00        0.00        0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
     10,840.20       0.00        0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
     17,137.79       0.00        0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
       195.00        0.00        0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
       195.00        0.00        0.00      0.00
10-09-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00        0.00      0.00
10-08-12  00-00  632  STATUTORY EXPENSES
        27.00        0.00        0.00      0.00
09-28-12  00-00  630  ATTORNEY ADVANCES
       172.50        0.00        0.00      0.00
09-14-12  10-11  168  REPAY OF ESCROW ADVANCE
         0.00        0.00        0.00   3494.23-  3,494.23
09-14-12  10-11  173  PAYMENT
                  4,039.13    6,499.72   3494.23
                  2,832,202.37            14425.55-  NEW PRINCIPAL/ESCROW BALANCES
09-12-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00        0.00      0.00
08-13-12  09-11  168  REPAY OF ESCROW ADVANCE
         0.00        0.00        0.00   3494.23-  3,494.23
08-13-12  09-11  173  PAYMENT                                         08-09-12
                  4,029.89    6,508.96   3494.23
                  2,836,241.50            17919.78-  NEW PRINCIPAL/ESCROW BALANCES
08-09-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00        0.00      0.00
07-25-12  00-00  633  MISC. F/C AND B/R EXPENSES
```

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

 **This page is part of your document - DO NOT DISCARD** 



## 20121400719



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/18/12 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |





**L E A D S H E E T**

201209180220010

00006453701

004287356

**SEQ:**
**08**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

r20

*exhibit 3*

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Recording Requested By

WHEN RECORDED MAIL TO   ServiceLink
and
MAIL TAX STATEMENTS TO:

Citibank, N.A., as Trustee for American Home
Mortgage Assets Trust 2006-4, Mortgage-Backed
Pass-Through Certificates Series 2006-4
c/o Homeward Residential, Inc., f/k/a American
Home Mortgage Servicing, Inc.

4875 Belfort Road, Suite 130

Jacksonville, FL 32256



09/18/2012

*20121400719*

---

Trustee Sale No. 11-03167-6     Loan No. 0031284599     Title Order No. 931421

### TRUSTEE'S DEED UPON SALE

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

APN 2069-102-022

The undersigned grantor declares:
1) The Grantee herein <u>was</u> the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was .......................................... $2,969,857.93
3) The amount paid by the grantee at the trustee sale was ......................................... $2,682,586.71
4) The documentary transfer tax is ...................................................................... $00.00
5) Said property is in the City of CALABASAS, Los Angeles County

POWER DEFAULT SERVICES, INC. (herein called Trustee), as the duly appointed Trustee under the
Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty,
express or implied, to Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-4,
Mortgage-Backed Pass-Through Certificates Series 2006-4 (herein called Grantee), all of its right, title and
interest in and to that certain property situated in the County of Los Angeles, State of California, described
as follows:

See Property Description Attached Hereto as Exhibit "A"

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust
dated 07/24/2006 and executed by KATHLEEN ANGEL EISENBERG, A MARRIED WOMAN AS HER
SOLE AND SEPERATE PROPERTY, as Trustor, and recorded on July 27, 2006, as Instrument No. 06
1664292 of Official Records in the office of the Recorder of Los Angeles County, CA, and after fulfillment
of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of
the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice
of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of
copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of
Trust, sold the herein described property at public auction on <u>August 30, 2012</u>. Grantee, being the highest
bidder at said sale, became the purchaser of said property for the amount bid being $2,682,586.71 in
lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust

1

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

at the time of said Trustee's Sale.

Dated: September 10, 2012

POWER DEFAULT SERVICES, INC. as Trustee
By: Fidelity National Title Company, its agent

Rosanna Chavez, Authorized Signature

State of California            )ss.
County of San Francisco        )ss

On September 10 2012, before me, Natalie Gold, Notary Public, personally appeared Rosanna Chavez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Natalie Gold # 1828450
My Commission Expires December 27, 2012

NATALIE GOLD
COMM. # 1828450
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Dec. 27, 2012

(Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

MEMBER MEMO: THIS COPY IS NOT an OFFICIAL RECORD.

Order No.: 931421

Customer Reference: 11-03167-6

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **LOS ANGELES**, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 10 OF TRACT NO. 35596-20 AS SHOWN AND DEPICTED ON THAT CERTAIN MAP RECORDED IN BOOK 1295, PAGES 41 THROUGH 47, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

EXCEPTING AND RESERVING UNTO GRANTOR ALL THOSE CERTAIN EASEMENTS, RESERVATIONS, RIGHTS, AND RIGHT-OF-WAY REFERRED TO IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE OAKS OF CALABASAS (THE "MASTER ASSOCIATION") RECORDED APRIL 12, 1995, AS INSTRUMENT NO. 95-513260, OFFICIAL RECORDS OF LOS ANGELES COUNTY, AND ANY AMENDMENTS, ADDENDA AND SUPPLEMENTS THERETO (COLLECTIVELY, THE "DECLARATION").

This page is part of your document - DO NOT DISCARD

 

## 20121462963

 

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/28/12 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |





LEADSHEET



201209280980014

00006511563



004315333

SEQ:
01

ERDS - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED                E12

Exhibit 4

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Fidelity National Title Company
135 Main Street, Suite 1900
San Francisco , CA 94105

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: 11-03167-5 - Loan No:  0031284599

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day September 27, 2012  with respect to the following:

1.)     THAT POWER DEFAULT SERVICES, INC, is the duly appointed Trustee under that certain Deed of Trust dated July 24, 2006 and recorded July 27, 2006 in Book  NA at Page NA, Instrument No. 06 1664292, wherein KATHLEEN ANGEL EISENBERG, A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY are named as Trustors, FIRST AMERICAN TITLE COMPANY is named as trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME MORTGAGE, is named as beneficiary;

2.)     THAT THE DEED OF TRUST encumbers real property located in the County of  Los Angeles, State of California, described as follows:

APN: 2069-102-022

Legal Description Attached

3.)     THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the beneficiary did declare a default, as set forth in a Notice of Default recorded 11/17/2011 as instrument number in the office of the Recorder of Los Angeles County, State of California

4.)     THAT THE TRUSTEE has been informed that the Beneficiary and Trustee thereby desire to rescind the Trustee's Deed Upon Sale recorded upon the subject property following the foreclosure sale which did occur on 08/30/2012;

5.)     THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the trustee's sale;

NOW THEREFORE, the undersigned hereby rescinds the Trustee's Sale and purported Trustee's Deed Upon Sale recorded 9/18/2012 as recorder's reference number 20121400719, in the office of the Recorder of Los Angeles County, State of California and hereby advises that the Deed of Trust is in full force and effect.

Dated  September 27, 2012

POWER DEFAULT SERVICES, INC, as Trustee
By Fidelity National Title, as its agent

Jason Kane, Authorized Signor

State of California          )ss.
County of San Francisco      )ss

On September 27, 2012 before me, Elida Rosado, Notary Public, personally appeared Jason Kane, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Elida Rosado #1882764
My Commission Expires March 14, 2014

Order No: 933421                                                    Customer Reference: 11-03167-6

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 10 OF TRACT NO. 35596-20 AS SHOWN AND DEPICTED ON THAT CERTAIN MAP RECORDED IN BOOK 1295, PAGES 41 THROUGH 47, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

EXCEPTING AND RESERVING UNTO GRANTOR ALL THOSE CERTAIN EASEMENTS, RESERVATIONS, RIGHTS, AND RIGHT-OF-WAY REFERRED TO IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE OAKS OF CALABASAS (THE "MASTER ASSOCIATION") RECORDED APRIL 12, 1995, AS INSTRUMENT NO. 95-513260, OFFICIAL RECORDS OF LOS ANGELES COUNTY, AND ANY AMENDMENTS, ADDENDA AND SUPPLEMENTS THERETO (COLLECTIVELY, THE "DECLARATION").



**FAX**

*HELP. URGENT. Please*

For: Henry Cruz

Fax number: 866-898-9662

From: Kathy Angel Eisenebrg

Fax number: 818-223-9974 / OEYLOANS@AOL.com

Date: *FEBRUARY 7, 2013*

Regarding: Loan number #0031284599

Number of pages:

Comments: Forbearance agreement

*I need to know if you postponed the sale for Monday*

*818·324·9905*

*PLEASE CALL TO CONFIRM THAT THE SALE is postponed for Monday 2/11/2013*

Exhibit 5

Page 1 of 1

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/3/2013 7:36:56 A.M. Pacific Standard Time
Subj: Re: Homeward Residential

Mr. Cruz,

I want to get our home loan back on track, and I have the funds to do that, but I need you to keep the sale on hold until I have time to deal with it. I feel I will be able to call you in the next 15 days if not sooner. Thank you for your understanding and I need a return email back by Monday so I do not have to worry about the sale on the 11th.

Sincerely,

David Eisenberg

In a message dated 1/2/2013 7:27:37 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

I have made a request to postpone foreclosure sale for another 30 days.

When would be a good time to have an actual conversation with you?

Thanks,

Page 1 of 1

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/5/2013 8:27:07 A.M. Pacific Standard Time
Subj: Homeward Residential

Mr. Cruz,

I need to hear from you today via email. Please confirm you postponed the sale and that we will clear this up this month as I wrote you in the e-mail I sent on Sunday.

Thanks you very much,

David

Sent from my iPhone

In a message dated 1/2/2013 7:27:37 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

I have made a request to postpone foreclosure sale for another 30 days.

When would be a good time to have an actual conversation with you?

Thanks,

Page 1 of 1

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/5/2013 5:25:13 P.M. Pacific Standard Time
Subj: Homeward Residential

Mr. Cruz,

My wife just confirmed with Fidelity that the house is scheduled for sale again on February 11 and your company has not put it on hold. I really need this last extension so I can deal with the issues with the loan. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David


Sent from my iPhone

From: De4loans@aol.com
To: henry.cruz@gohomeward.com
Sent: 2/6/2013 3:44:01 P.M. Pacific Standard Time
Subj: Fwd: Homeward Residential

This is my third or fourth frantic e-mail asking you to confirm the sale is not taking place on Monday. I have seen no reply and I believe my wife left you a message as did I. I need to know what you are going to do so I know what I have to do. Please give me a response one way or the other.

Thank you

Sent from my iPhone

Page 1 of 1

From: Henry.Cruz@gohomeward.com
To: De4loans@aol.com
CC: Henry.Cruz@gohomeward.com
Sent: 1/2/2013 7:27:37 P.M. Pacific Standard Time
Subj: RE: Homeward Residential

Mr. Eisenberg

I have made a request to postpone foreclosure sale for another 30 days.

When would be a good time to have an actual conversation with you?

Thanks,

**From: De4loans@aol.com [mailto:De4loans@aol.com]**
**Sent: Wednesday, January 02, 2013 12:40 PM**
**To: Henry Cruz**
**Subject: Re: Homeward Residential**

Mr. Cruz,

I just confirmed with Fidelity that the house is scheduled for sale again on January 7th and your company has not put it on hold. I do not understand this since your email below assured me that the sale is on hold until we resolve the issues. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David

In a message dated 12/3/2012 12:06:22 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

Our foreclosure department has confirmed that the foreclosure sale has been placed hole.

Thanks,

Page 1 of 3

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 1/2/2013 10:39:39 A.M. Pacific Standard Time
Subj: Re: Homeward Residential

Mr. Cruz,

I just confirmed with Fidelity that the house is scheduled for sale again on January 7th and your company has not put it on hold. I do not understand this since your email below assured me that the sale is on hold until we resolve the issues. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David

In a message dated 12/3/2012 12:06:22 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

Our foreclosure department has confirmed that the foreclosure sale has been placed hole.

Thanks,

From: De4loans@aol.com [mailto:De4loans@aol.com]
Sent: Monday, December 03, 2012 1:30 PM
To: Henry Cruz
Subject: Re: Homeward Residential

Mr. Cruz,

I just called Fidelity and they said they are selling my home on Thursday. You promised me the sale date was on hold. You need to take care of this issue ASAP so we can work out the payments.

David

In a message dated 11/29/2012 10:42:28 A.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

2/8/13                         Gmail - 25431 Prado De Las Fresas, Calabasas, CA 91302-3660



## 25431 Prado De Las Fresas, Calabasas, CA 91302-3660

**Rachel Ruttenberg Milman** <rruttenberg@gmail.com>                    Thu, Feb 7, 2013 at 5:05 PM
To: henry.cruz@gohomeward.com, ngold@fnf.com
Cc: Mark Goodfriend <markgoodfriend@yahoo.com>
Bcc: de4loans@aol.com

Dear Mr. Cruz and Ms. Gold,

Please be advised that our office represents Kathleen Angel Eisenberg and David Eisenberg related to the above
referenced property.

Our office will be going in tomorrow, February 8, 2013, at 8:30 a.m., ex parte, seeking a Temporary Retraining
Order preventing the sale of the property located 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 and
OSC for a hearing on a preliminary injunction which shall further prevent the sale of the aforementioned property.
This ex parte application will be heard at the Van Nuys Courthouse, located at 6230 Sylmar Avenue, Van Nuys,
California 91401 in the department assigned by the clerk of the court. My cell phone number is 818-681-2710 and
I will be appearing on this matter tomorrow in court. Please feel free to contact me if you will be attending the
hearing and/or opposing the this ex parte application.

I look forward to hearing from you shortly regarding your intentions.

Sincerely,

—
Rachel S. Ruttenberg, Esq.
16255 Ventura Blvd., Suite 205
Encino, CA 91436
RRuttenberg@gmail.com
(818) 681-2710

---

**Rachel Ruttenberg Milman** <rruttenberg@gmail.com>                    Thu, Feb 7, 2013 at 5:07 PM
To: tamala.dailey@fnf.com
Cc: Mark Goodfriend <markgoodfriend@yahoo.com>
Bcc: de4loans@aol.com

[Quoted text hidden]

exhibit 6

EXHIBIT "B"

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:     6230 Sylmar Avenue, Van Nuys, CA 91401

PLAINTIFF:

DEFENDANT:

Reserved for Clerk's File Stamp

**ORIGINAL FILED**

FEB 08 2013

LOS ANGELES
SUPERIOR COURT

CASE NUMBER:

L C 0 9 9 7 4 8

### NOTICE OF:
STATUS CONFERENCE/ OSC RE DISMISSAL and
CASE MANAGEMENT CONFERENCE

O THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

OU ARE HEREBY NOTIFIED THAT THE ABOVE MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES,
NCLUDING TRIAL, TO JUDGE **JAMES A. KADDO**, PRESIDING IN DEPARTMENT **NW-I**

ou are Ordered to serve this notice of hearing to all parties/attorneys of record forthwith and serve a copy of this notice to all parties to the
:tion within 60 days of service of this notice. The Court Orders that except as otherwise Ordered in writing, all attorneys (or unrepresented
rties as applicable) appear at all scheduled hearings. All parties/attorneys of record are ordered to meet and confer about the matters to be
scussed no later than 30 days before the Case Management Conference (which shall take place approximately 140 days from filing of the
omplaint). The complaint must be served on all named defendants and proofs of service must be filed with the Court within 60 days after the
ling of the complaint. If all named defendants have not been served and proofs filed before the 60 days have elapsed, application must have
een made with Court to extend or otherwise modify rules of service Rule CRC 3.110 (b),(c) and (e).

our initial Status Conference ("ISC") has been scheduled at the courthouse address shown above on:

| · Date: 5/20/13 | Time:8:30AM | Dept: NW I | Room: 520 |

ur Case Management Conference ("CMC") has been scheduled at the courthouse address shown above on:

| Date: 6/27/13 | Time: 8:30AM | Dept: NW I | Room: 520 |

he complaint has been served and answered prior to the ISC, the ISC may serve as otherwise the CMC in which case the Court will likely vacate the
C date. A completed CMC Statement must be filed by all parties directly in Dept. "I" at least 5 calendar days prior to each status conference.
C Rule 3.724 and Rule 3.727 require that attorneys attending the conferences be familiar with the case and be fully prepared to participate
ectively in all case management conferences.

he ISC and/or CMC the Court may make pretrial orders including the following: establishing a discovery schedule; referring the case to
ernative Dispute Resolution (ADR); reclassifying the case; dismissing fictitious/unnamed defendants; setting subsequent conferences and the
l date; or other Orders to achieve the goals of the Trial Court Delay Reduction Act (GC68600 et. seq.)

tice is hereby given that if you do not file a case management conference statement or if the trial attorney should fail to appear and/or fail to
:ctively participate at any such conference, the Court may impose sanctions (including dismissal of the case, striking of the answer and/or
ment of money), pursuant to LASC Local Rules Chapter 3, CCP Sections 177.5, 583.150, 583.360 and 583.420, GC Section 68608 (b) and
itherwise authorized by law.

*TICE TO DEFENDANT: THE SETTING OF ANY CASE MANAGEMENT CONFERENCES DO NOT EXEMPT YOU FROM
.ING A RESPONSIVE PLEADING AS REQUIRED BY LAW.*

ate_____

Judicial Officer: *JAMES A. KADDO*

## CERTIFICATE OF SERVICE

the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to
e cause herein, and that on this date I served the Notice of Case Management Conference upon each party or
unsel named below:

by depositing in the United States mail at the courthouse in _____, California, one copy of the original filed
rein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

by personally giving the party notice upon filing of the complaint.

JOHN A. CLARK, Executive Officer/Clerk
of the Superior Court/County of Los Angeles

by _____ Deputy Clerk

Kim Garrison

te: _____

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| | CASE NUMBER | FILE STAMP |
| PLAINTIFF(S)/PETITIONER(S) | LC099748 | ORIGINAL FILED<br>FEB 08 2013<br>LOS ANGELES<br>SUPERIOR COURT |
| | NOTICE OF | |
| | CASE ASSIGNMENT | |
| DEFENDANT(S)/RESPONDENT(S) | | |

TO THE PLAINTIFF(S) AND THE ATTORNEY OF RECORD:

YOU ARE HEREBY NOTIFIED THAT THE ABOVE MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES,

INCLUDING TRIAL, TO *JUDGE JAMES A. KADDO*, PRESIDING IN *DEPARTMENT NW-I*, IN THE SUPERIOR

COURT, LOCATED AT *6230 SYLMAR AVENUE, VAN NUYS, CA 91401*

*Richard H Kirschner*

Hon. Richard Kirschner, Supervising Judge

## CERTIFICATE OF SERVICE

☑ I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy to the designated representative/attorney service at the time of filing of the original complaint.

☐ I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy in person this date to counsel for plaintiff or plaintiff in pro per.

☐ I am not a party to the within action, and I certify that I served a true copy of the above notice to the plaintiff or his attorney of record by depositing in the United States mail at the courthouse in ____Van Nuys____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

[        ]          [        ]

[        ]          [        ]

JOHN A. CLARKE, Executive Officer/Clerk
of the Superior Court, County of Los Angeles

A CORPORATION MUST BE
REPRESENTED BY A LICENSED
CALIFORNIA ATTORNEY

Date:_____          By: _____, Deputy

Kim Garrison

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/25/13

DEPT. NWI

HONORABLE JAMES A. KADDO          JUDGE | R. VILLARREAL     DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
1
     K. GHAZARIAN, C.A.     Deputy Sheriff | NONE          Reporter

8:29 am   LC099748                Plaintiff
5                                 Counsel     RACHEL S. RUTTENBERG
          KATHLEEN ANGEL EISENBERG            MILMAN (X)
          VS                      Defendant
          CITIBANK                Counsel

---

**NATURE OF PROCEEDINGS:**

EX PARTE APPLICATION RE PRELIMINARY INJUNCTION

The application is called for hearing.  The
application is granted on condition of the posting
of a bond of $50,000.00 on or before 3/11/13.

ORDER RE PRELIMINARY INJUNCTION is signed and filed
this date.

Moving party is to give notice.

MINUTES ENTERED
02/25/13
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/08/13

**DEPT.** NWI

HONORABLE JAMES A. KADDO            JUDGE   R. VILLARREAL            DEPUTY CLERK

HONORABLE                      JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR

K. GHAZARIAN C.A.        Deputy Sheriff    NONE                Reporter

LC099748

KATHLEEN ANGEL EISENBERG
VS
CITIBANK

Plaintiff
Counsel    RACHEL S. RUTTENBERG
           MILMAN  (X)

Defendant
Counsel

NATURE OF PROCEEDINGS:

(1) EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY
INJUNCTION;

The application is called for hearing.

Order shortening time is granted. Order To Show Cause
why a preliminary injunction should not issue is
2/25/13 at 8:30 a.m. in N WI, and as more fully
reflected in the ORDER EX PARTE APPLICATION signed
and filed this date.

Moving party is to give notice.

MINUTES ENTERED
02/08/13
COUNTY CLERK

1  Mark E. Goodfriend, Esq. (State Bar No. 97188)
   **LAW OFFICES OF MARK E. GOODFRIEND**
2  16255 Ventura Boulevard, Suite 205
   Encino, California 91436
3  Telephone: (818) 783-8866
   Facsimile: (818) 783-5445
4
   Attorneys for Plaintiff
5  KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL
6
7              SUPERIOR COURT FOR THE STATE OF CALIFORNIA
8                   FOR THE COUNTY OF LOS ANGELES
9  KATHLEEN ANGEL EISENBERG aka     CASE NO.: LP 099738
   KATHLEEN ANGEL,
10                                   [PROPOSED] PRELIMINARY
           Plaintiff,                INJUNCTION
11
       vs.
12                                   DATE: February 25, 2013
   CITIBANK, N.A., AS TRUSTEE FOR    TIME: 8:30 a.m.
13 AMERICAN HOME MORTGAGE           DEPT: NWI
   ASSETS TRUST 2006-4 MORTGAGE-
14 BACKED PASS-THROUGH
   CERTIFICATES SERIES 2006-4;
15 HOMEWARD RESIDENTIAL, INC.;
   POWER DEFAULT SERVICES, INC.;
16 and DOES 1 through 40, inclusive,
17         Defendants.
18
19
20
21
22      The motion of Plaintiff KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL
23 ("Plaintiff") for a preliminary injunction came on for hearing in Department NWI of this
24 Court on February 25, 2013, 8:30 a.m.. Rachel S. Ruttenberg, Esq. and/or Mark E. Goodfriend
25 appeared on behalf of Plaintiff. No appearance was made on behalf of Defendants
26 CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST
27                                   1
28 ──────────────────────────────────
         [PROPOSED] PRELIMINARY INJUNCTION

**ORIGINAL FILED**

FEB 2 5 2013

**LOS ANGELES**
**SUPERIOR COURT**

1  2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4,

2  HOMEWARD RESIDENTIAL, INC. and POWER DEFAULT SERVICES, INC.

3      Having read the Application for Order to Show Cause re Issuance of a Preliminary

4  Injunction, the Memorandum of Points and Authorities and the Supporting Declarations and

5  the Notice of Non-opposition by Defendants to Order to Show Cause re Issuance of a

6  Preliminary Injunction filed by Plaintiff, and having heard oral argument of counsel, and

7  GOOD CAUSE APPEARING, IT IS HEREBY ORDERED that Plaintiff's Motion is granted.

8  During the pendency of this action through to and including trial of this action or pending

9  further order of the court, Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN

10  HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH

11  CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER

12  DEFAULT SERVICES, INC.; and DOES 1 through 40, inclusive, their agents, employees,

13  and all persons acting with, by, for, under or in concert with any of them or on their behalf,

14  are enjoined and restrained from conducting any foreclosure or trustee's sale of, selling,

15  and/or transferring ownership of their deed of trust or encumbering the property located at

16  25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

17      IT IS FURTHER ORDERED THAT Plaintiff shall file with the Clerk of the Court by

18  _3/11/13_, 2013, an undertaking in the amount of $ _50,000_ pending trial of this

19  action.

20      The Court reserves jurisdiction to modify or dissolve the injunction as may be required

21  by the interests of justice.

22      IT IS FURTHER ORDERED THAT _injunction is contid_

23  _upon posting of bond_ _pl_

24

25  DATED: February 25, 2013

26                                              JUDGE OF THE SUPERIOR COURT
                                                JAMES A. KADDO

27                                              2

28      [PROPOSED] PRELIMINARY INJUNCTION

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

I am employed in the county of Los Angeles, State of California. I am over the age of 18; my business address is: 16255 Ventura Boulevard, Suite 205 Encino, California 91436-2300. On February 22, 2013, I caused the foregoing document(s) described as **[PROPOSED] PRELIMINARY INJUNCTION** to be served on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| HOMEWARD RESIDENTIAL, INC.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC. |
| CITIBANK, N.A.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC., as Servicing Agent for CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4 |
| POWER DEFAULT SERVICES, INC.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for POWER DEFAULT SERVICES, INC. |

**BY PERSONAL SERVICE**: I caused such envelope to be delivered by hand to the offices of the addressee listed above.

**X    BY MAIL**: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepared at Encino, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY OVERNIGHT DELIVERY**: I caused such envelope to be delivered by overnight delivery service to the offices of the addressee listed above.

**X      BY EMAIL**: From Rruttenberg@gmail.com to henry.cruz@gohomeward.com, ngold@fnf.com, tamala.dailey@fnf.com and tamie.dawson@gohomeward.com at approximately m., directed to . The email address I used reported no error.

**X** I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on February 22, 2013, at Encino, California.

Rachel S. Ruttenberg

3

1   Mark E. Goodfriend, Esq. (State Bar No. 97188)
2   Rachel S. Ruttenberg, Esq. (State Bar No. 260947)
    **LAW OFFICES OF MARK E. GOODFRIEND**
3   16255 Ventura Boulevard, Suite 205
    Encino, California 91436
4   Telephone: (818) 783-8866
5   Facsimile: (818) 783-5445

6   Attorneys for Plaintiff
7   KATHLEEN ANGEL aka KATHLEEN ANGEL EISENBERG

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES

10   KATHLEEN ANGEL aka KATHLEEN )   CASE NO. LC099748
11   ANGEL EISENBERG,              )
                              )
12          Plaintiff,         )   **P L A I N T I F F ' S   N O T I C E   O F**
13                               )   **NON-OPPOSITION BY DEFENDANTS**
       vs.                       )   **TO ORDER TO SHOW CAUSE RE**
14                               )   **ISSUANCE OF A PRELIMINARY**
15   CITIBANK, N.A., AS TRUSTEE FOR )   **INJUNCTION**
    AMERICAN HOME MORTGAGE )
16   ASSETS TRUST 2006-4 MORTGAGE- )   DATE: February 25, 2013
    B A C K E D    P A S S - T H R O U G H )   TIME: 8:30 A.M.
17   CERTIFICATES SERIES 2006-4; )   DEPT.: NWI
18   HOMEWARD RESIDENTIAL, INC.; )
    POWER DEFAULT SERVICES, INC.; )
19   and DOES 1 through 40, inclusive,   )
                              )
20          Defendants.        )
21                               )
    _____ )
22

23

24

25

26                             1

27

    **PLAINTIFF'S NOTICE OF NON-OPPOSITION BY DEFENDANTS TO ORDER TO SHOW**
28        **CAUSE RE ISSUANCE OF A PRELIMINARY INJUNCTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that no written opposition was filed by CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER DEFAULT SERVICES, INC. (collectively, the "Defendants") to PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION filed along with the Memorandum of Points and Authorities and Supporting Declarations filed on February 8, 2013, at which time the court issued a TRO pursuant to Plaintiff's Ex Parte Application and set a hearing on the Order to Show Cause for February 25, 2013, at 8:30 a.m. before this Court. Pursuant to the court's February 8, 2013 order, Plaintiff served Defendants with the Application, the Memorandum of Points and Authorities and the Supporting Declarations via email on February 8, 2013 and personal service on February 11, 2013. See Proofs of Service filed with this Court.

The February 8, 2013, court order also set a deadline for Defendants to file and serve any opposition to the OSC re Issuance of a Preliminary Injunction by 4:30 p.m. on February 18, 2013. As of today, February 22, 2013 at approximately 2:00 p.m., no opposition papers to the Application and OSC re Issuance of a Preliminary Injunction have been served on Plaintiff's counsel.

2

Based on the foregoing, Plaintiff requests that the Defendants be precluded from offering oral argument at the hearing on the Application and OSC re Issuance of a Preliminary Injunction, and that the Court find that the failure of the Defendants to file any opposition papers creates an inference that the Application is meritorious. Wherefore, Plaintiff respectfully requests that the Application be granted in its entirety and the Preliminary Injunction issue.

**CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that this Court issue a Preliminary Injunction in the form set forth in the [Proposed] Preliminary Injunction submitted herewith, and for such other alternative and further relief as the Court may deem to be just and appropriate.

Respectfully submitted,

DATED: February 22, 2013          LAW OFFICES OF MARK E. GOODFRIEND

By: _____
Mark E. Goodfriend
Rachel S. Ruttenberg,
Attorneys for Plaintiff
KATHLEEN ANGEL EISENBERG

3

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

I am employed in the county of Los Angeles, State of California. I am over the age of 18; my business address is: 16255 Ventura Boulevard, Suite 205 Encino, California 91436-2300. On **February 22, 2013**, I caused the foregoing document(s) described as **PLAINTIFF'S NOTICE OF NON-OPPOSITION BY DEFENDANTS TO ORDER TO SHOW CAUSE RE ISSUANCE OF A PRELIMINARY INJUNCTION** to be served on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| HOMEWARD RESIDENTIAL, INC.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC. |
| CITIBANK, N.A.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC., as Servicing Agent for CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4 |
| POWER DEFAULT SERVICES, INC.<br>c/o CT Corporation System<br>818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for POWER DEFAULT SERVICES, INC. |

__ **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee listed above.

_X_ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepared at Encino, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____ **BY OVERNIGHT DELIVERY:** I caused such envelope to be delivered by overnight delivery service to the offices of the addressee listed above.

4

PLAINTIFF'S NOTICE OF NON-OPPOSITION BY DEFENDANTS TO ORDER TO SHOW CAUSE RE ISSUANCE OF A PRELIMINARY INJUNCTION

1

2    <u>X</u>   **BY EMAIL:** From Rruttenberg@gmail.com to henry.cruz@gohomeward.com,
ngold@fnf.com, tamala.dailey@fnf.com and tamie.dawson@gohomeward.com at

3 approximately m., directed to . The email address I used reported no error.

4    __X__ I declare under penalty of perjury under the laws of the United States of America

5 and the State of California that the above is true and correct. Executed on February 22,
2013, at Encino, California.

6

7

8                                          Rachel S. Ruttenberg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                        5

27

28   **PLAINTIFF'S NOTICE OF NON-OPPOSITION BY DEFENDANTS TO ORDER TO SHOW
CAUSE RE ISSUANCE OF A PRELIMINARY INJUNCTION**

1 | Mark E. Goodfriend, Esq. (State Bar No. 97188)
**LAW OFFICES OF MARK E. GOODFRIEND**
2 | 16255 Ventura Boulevard, Suite 205
Encino, California 91436
3 | Telephone: (818) 783-8866
Facsimile: (818) 783-5445
4 |
Attorneys for Plaintiff
5 | KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL

6 |

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

7 | FOR THE COUNTY OF LOS ANGELES

8 |

KATHLEEN ANGEL EISENBERG aka | CASE NO.: LP 099738
9 | KATHLEEN ANGEL,
| **[PROPOSED] PRELIMINARY**
10 |         Plaintiff, | **INJUNCTION**

11 |     vs.
| DATE: February 25, 2013
12 | CITIBANK, N.A., AS TRUSTEE FOR | TIME: 8:30 a.m.
AMERICAN HOME MORTGAGE | DEPT: NWI
13 | ASSETS TRUST 2006-4 MORTGAGE-
BACKED PASS-THROUGH
14 | CERTIFICATES SERIES 2006-4;
HOMEWARD RESIDENTIAL, INC.;
15 | POWER DEFAULT SERVICES, INC.;
and DOES 1 through 40, inclusive,
16 |
17 |         Defendants.

18 |

19 |

20 |

21 |

22 |         The motion of Plaintiff KATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL

23 | ("Plaintiff") for a preliminary injunction came on for hearing in Department NWI of this

24 | Court on February 25, 2013, 8:30 a.m.. Rachel S. Ruttenberg, Esq. and/or Mark E. Goodfriend

25 | appeared on behalf of Plaintiff. No appearance was made on behalf of Defendants

26 | CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST

27 |                                     1

28 |

1 | 2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4,

2 | HOMEWARD RESIDENTIAL, INC. and POWER DEFAULT SERVICES, INC.

3 |        Having read the Application for Order to Show Cause re Issuance of a Preliminary

4 | Injunction, the Memorandum of Points and Authorities and the Supporting Declarations and

5 | the Notice of Non-opposition by Defendants to Order to Show Cause re Issuance of a

6 | Preliminary Injunction filed by Plaintiff, and having heard oral argument of counsel, and

7 | GOOD CAUSE APPEARING ,IT IS HEREBY ORDERED that Plaintiff's Motion is granted.

8 | During the pendency of this action through to and including trial of this action or pending

9 | further order of the court, Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN

10 | HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH

11 | CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER

12 | DEFAULT SERVICES, INC.; and DOES 1 through 40, inclusive, their agents, employees,

13 | and all persons acting with, by, for, under or in concert with any of them or on their behalf,

14 | are enjoined and restrained from conducting any foreclosure or trustee's sale of, selling,

15 | and/or transferring ownership of their deed of trust or encumbering the property located at

16 | 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

17 |        IT IS FURTHER ORDERED THAT Plaintiff shall file with the Clerk of the Court by

18 | _____, 2013, an undertaking in the amount of $_____ pending trial of this

19 | action.

20 |        The Court reserves jurisdiction to modify or dissolve the injunction as may be required

21 | by the interests of justice.

22 |        IT IS FURTHER ORDERED THAT_____

23 | _____.

24 |

25 | DATED: February 25, 2013

                                     _____

26 |                                       JUDGE OF THE SUPERIOR COURT

27 |

28 |

[PROPOSED] PRELIMINARY INJUNCTION

1

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

2

I am employed in the county of Los Angeles, State of California. I am over the age of 18; my business address is: 16255 Ventura Boulevard, Suite 205 Encino, California 91436-2300. On

3

February 22, 2013, I caused the foregoing document(s) described as **[PROPOSED] PRELIMINARY INJUNCTION** to be served on the interested parties in this action by

4

placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| 5 HOMEWARD RESIDENTIAL, INC.<br>c/o CT Corporation System<br>6 818 W. Seventh St.<br>7 Los Angeles, CA 90017 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC. |
| CITIBANK, N.A.<br>8 c/o CT Corporation System<br>818 W. Seventh St.<br>9 Los Angeles, CA 90017<br><br>10<br><br>11 | Agent for Service of Process for HOMEWARD RESIDENTIAL, INC., as Servicing Agent for CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4 |
| 12 POWER DEFAULT SERVICES, INC.<br>c/o CT Corporation System<br>13 818 W. Seventh St.<br>Los Angeles, CA 90017 | Agent for Service of Process for POWER DEFAULT SERVICES, INC. |

14

15    **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee listed above.

16    **X    BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal

17    Service on that same day with postage thereon fully prepared at Encino, California, in the ordinary course of business. I am aware that on motion of the party served, service is

18    presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20    **BY OVERNIGHT DELIVERY:** I caused such envelope to be delivered by overnight delivery service to the offices of the addressee listed above.

21    **X    BY EMAIL:** From Rruttenberg@gmail.com to henry.cruz@gohomeward.com, ngold@fnf.com, tamala.dailey@fnf.com and tamie.dawson@gohomeward.com at

22    approximately m., directed to . The email address I used reported no error.

23    **X** I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on February 22, 2013, at

24    Encino, California.

25

26                                                                _____
                                                                         Rachel S. Ruttenberg

27                                                             3

28    _____
                          [PROPOSED] PRELIMINARY INJUNCTION

$1.120
US POSTAGE
FIRST CLASS
062S000545290
91436
C20918.03
stamps.com

FROM:

Law Offices of
**MARK E. GOODFRIEND**

16255 Ventura Boulevard, Ste. 205, Encino, CA 91436-2300

TO:

HOMEWARD RESIDENTIAL, INC.
c/o CT Corporation System
818 W. Seventh St.
Los Angeles, CA 90017

ORIGINAL FILED

FEB 0 8 2013

LOS ANGELES
SUPERIOR COURT

1  Mark E. Goodfriend, Esq. (State Bar No. 97188)
   **LAW OFFICES OF MARK E. GOODFRIEND**
2  16255 Ventura Boulevard, Suite 205
   Encino, California 91436
3  Telephone:  (818) 783-8866
   Facsimile:  (818) 783-5445
4
   Attorneys for Plaintiff
5  ATHLEEN ANGEL EISENBERG aka KATHLEEN ANGEL

6
              SUPERIOR COURT FOR THE STATE OF CALIFORNIA
7
                 FOR THE COUNTY OF LOS ANGELES
8
   KATHLEEN ANGEL EISENBERG aka      CASE NO.:     LC099748
9  KATHLEEN ANGEL,
                                     [PROPOSED] ORDER ON EX PARTE
10           Plaintiff,              APPLICATION

11      vs.
                                     DATE: February 8, 2013
12 CITIBANK, N.A., AS TRUSTEE FOR    TIME: 8:30 a.m.
   AMERICAN HOME MORTGAGE            DEPT:  7
13 ASSETS TRUST 2006-4 MORTGAGE-
   BACKED PASS-THROUGH
14 CERTIFICATES SERIES 2006-4;
   HOMEWARD RESIDENTIAL, INC.;
15 POWER DEFAULT SERVICES, INC.;
   and DOES 1 through 40, inclusive,
16
             Defendants.
17

18

19

20 _____

21

22
   GOOD CAUSE HAVING BEEN SHOWN, IT IS HEREBY ORDERED:
23
         Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME
24
   MORTGAGE ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH
25
   CERTIFICATES SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER
26
   DEFAULT SERVICES, INC.; and DOES 1 through 40, inclusive are ordered to appear  on
27
                                     1
28 _____

            [PROPOSED] ORDER ON EX PARTE APPLICATION

1   __2/25_____, 2013 at 8:30 a.m. in Department __T__ of the above-entitled court

2   located at 6230 Sylmar Avenue, Van Nuys, California 91401 to show cause why a

3   preliminary injunction should not issue restraining and enjoining you, your agents and

4   employees and all persons acting by, for, under or in concert with you from conducting any

5   foreclosure or trustee's sale and/or selling the property located at 25431 Prado De Las Fresas,

6   Calabasas, CA 91302-3660.

7          Pending the hearing on the Order to Show Cause, or further order of the court,

8   Defendants CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE

9   ASSETS TRUST 2006-4 MORTGAGE- BACKED PASS-THROUGH CERTIFICATES

10  SERIES 2006-4; HOMEWARD RESIDENTIAL, INC.; POWER DEFAULT SERVICES,

11  INC.; and DOES 1 through 40, inclusive, their agents and all persons acting by, for, under or

12  in concert with any of them are enjoined from conducting any foreclosure or trustee's sale

13  and/or selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

14         This Order and all moving papers submitted in support of Plaintiff's Motion for a

15  Preliminary Injunction shall be personally served on counsel for Defendants personally or by

16  overnight delivery delivered by February 11, 2013. *and by e/mail on 2/8/13.*

17         Any opposition papers shall be filed and served, ~~personally~~ *by e/mail* or by fax, by 4:30 p.m. on

18  __2/18_____, 2013.  Any reply papers shall be filed and served, ~~personally~~ *by e/mail* or by fax, by

19  4:30 p.m. on __2/21_____, 2013.

20         Proof of service to be filed on or before February ~~14~~ 22, 2013.

21

22

23

24  DATED: February 8, 2013

25                                    JUDGE OF THE SUPERIOR COURT

26                                       JAMES A. KADDO

27                                            2

28  _____
                 [PROPOSED] ORDER ON EX PARTE APPLICATION

1 | Mark E. Goodfriend, Esq. (State Bar No. 97188)
Rachel S. Ruttenberg, Esq. (State Bar No. 260947)
2 | **LAW OFFICES OF MARK E. GOODFRIEND**
16255 Ventura Boulevard, Suite 205
3 | Encino, California 91436
Telephone: (818) 783-8866
4 | Facsimile: (818) 783-5445

5 | Attorneys for Plaintiff
KATHLEEN ANGEL EISENBERG
6 | aka KATHLEEN ANGEL

7

8 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10 | KATHLEEN ANGEL EISENBERG aka   CASE NO.:      LC099748
KATHLEEN ANGEL,

11 |                                 (1) **EX PARTE APPLICATION FOR**
Plaintiff,                           **TEMPORARY RESTRAINING**
12 |                                     **ORDER AND ORDER TO SHOW**
vs.                                   **CAUSE RE: PRELIMINARY**
13 |                                     **INJUNCTION;**
CITIBANK, N.A., AS TRUSTEE FOR
14 | AMERICAN HOME MORTGAGE       (2) **MEMORANDUM OF POINTS**
ASSETS TRUST 2006-4 MORTGAGE-         **AND AUTHORITIES IN**
15 | BACKED PASS-THROUGH               **SUPPORT THEREOF**
CERTIFICATES SERIES 2006-4;
16 | HOMEWARD RESIDENTIAL, INC.;   **[DECLARATIONS OF KATHLEEN**
POWER DEFAULT SERVICES, INC.;  **ANGEL EISENBERG AND RACHEL S.**
17 | and DOES 1 through 40, inclusive,  **RUTTENBERG, ESQ. FILED**
**CONCURRENTLY HEREWITH]**
18 | Defendants.

19 |                                 DATE: February 8, 2013
TIME: 8:30 a.m.
20 |                                 DEPT:

21

22

23

24

25

26

27 |                                 1

28 | EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION; DECLARATIONS

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2       Pursuant to California Code of Civil Procedure Section 526, Plaintiff KATHLEEN

3   ANGEL EISENBERG aka KATHLEEN ANGEL ("Plaintiff") hereby applies ex parte (a) for

4   an order that Defendants show cause at or before a hearing set by the Court why they and all

5   of their agents, employees, representatives and persons acting under, for or in concert with

6   them ("Defendants"), should not be enjoined from selling the below-described Property, and

7   (b) pending such hearing, for a Temporary Restraining Order ("TRO") enjoining Defendants,

8   from selling the real property located at 25431 Prado De Las Fresas, Calabasas, CA

9   91302-3660 (the "Property").

10      Ex parte relief is necessary because a Trustee Sale is scheduled for February 11, 2013,

11   at 9:00 a.m. and despite assurances from Defendants that they would place the sale "on hold"

12   until a forbearance, loan modification and/or payment plan was worked out to resolve any and

13   all outstanding arrearages on Plaintiff's mortgage, Defendants have failed and refused to do

14   so.

15      The application is made on the grounds that monetary compensation would not afford

16   adequate relief for the loss of Plaintiff's property, and that great and irreparable injury will

17   result to Plaintiff before the matter can be heard on notice.

18      The Application is further supported by the attached Declarations of Kathleen Angel

19   Eisenberg and Rachel S. Ruttenberg, Esq. filed concurrently herewith, the Memorandum of

20   Points and Authorities attached hereto, the pleadings and records filed concurrently herewith

21   and on file, such matters as the court may take judicial notice of and such other oral and

22   documentary evidence as the Court may entertain at the hearing on this matter.

23   Dated: February 8, 2013      LAW OFFICES OF MARK E. GOODFRIEND

24

25                 By:
                   Mark E. Goodfriend

26                  Rachel S. Ruttenberg, Attorneys for Plaintiff
                 KATHLEEN ANGEL EISENBERG

27                       2

28     EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
           RE: PRELIMINARY INJUNCTION; DECLARATIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff brings this ex parte application for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction related to a Trustee Sale currently scheduled for February 11, 2013, at 9:00 a.m. despite assurances from Defendants that foreclosure proceedings would be halted until Plaintiff is provided with a reasonable opportunity to reach a payment arrangement to satisfy the arrearages on the loan and Defendants' failure to provide her with that opportunity.

Specifically, in or about August 2012, Defendants entered into a written forbearance agreement with Plaintiff, pursuant to which Plaintiff was to make three monthly payments. It was understood by Plaintiff, by the representations of Defendants, that after the three payments were completed on time, Defendants would enter into a permanent forbearance, similar to the August 2012 Agreement. Plaintiff made two timely payments for August and September 2012. Unbeknownst to Plaintiff, on August 30, 2012, Defendants breached the forbearance agreement, conducting a foreclosure sale during the forbearance period. However, Plaintiff learned of the sale after she made the September payment and in fact the payment was credited to her account. Thereafter, in or about October 2012, Defendants refused to accept the balance of the payments due thereunder.  Defendants subsequently acknowledged their error and rescinded the sale, and although they also agreed in principle to put any sale on hold pending working out a new arrangement, Defendants have still failed and refused to do so, and a sale is now imminent.

Plaintiff is thus entitled to a temporary restraining order and preliminary injunction because under the test for preliminary injunction applicable under state law, there is a high probability of success and likelihood of injury and the balance of hardships tips sharply in favor of Plaintiff.

### II.   STATEMENT OF FACTS

1

1    The facts are set forth in the attached declarations of Kathleen Angel Eisenberg and
2  Rachel S. Ruttenberg filed concurrently herewith and are as follows:

3    Plaintiff KATHLEEN ANGEL EISENBERG ("Plaintiff") owns the property located
4  at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 (the "Property"). On or about
5  August 7, 2012, Plaintiff and Defendant Homeward Residential, Inc. ("Lender") entered into
6  a Forbearance Agreement (the "Agreement") whereby "Lender is willing to postpone or
7  forbear from initiating any Foreclosure Proceedings." See Forbearance Agreement,
8  unnumbered ¶ 6, a true and correct copy of which is attached hereto as Exhibit "1." Pursuant
9  to the terms of the Agreement, Plaintiff "shall begin making monthly forbearance payments
10  of 14033 and 08/100 Dollars ($ 14033.08) beginning the 8 day of August, 2012 and
11  continuing on the same day of each subsequent month until 10/08/12." See Exhibit "1"
12  numbered ¶ 4. Defendants informed and advised Plaintiff that upon completion of the
13  Agreement and receipt of three timely payments thereunder, a Permanent Forbearance
14  Agreement would take effect, which would be similar to the August 2012 Agreement.

15    Pursuant to the Agreement, Plaintiff made two payments of $14,033.08 to Lender. The
16  first payment was made on August 7, 2012 by a cashier's check drawn off of Plaintiff's Bank
17  of America account via overnight mail to Lender, which was subsequently credited to her
18  account with Lender on August 13, 2012. The second payment was made on September 5,
19  2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight
20  mail to Lender, which was subsequently credited to her account with Lender on September
21  14, 2012. See Exhibit "2" for true and correct copies of the Bank of America cashier's checks
22  in addition to Lender's Customer Account Activity Statement demonstrating when Plaintiff's
23  payments were credited to her account.

24    Unbeknownst to Plaintiff, a Trustee's Sale was held August 30, 2012, which resulted
25  in the recording of a Trustee's Deed Upon Sale on September 18, 2012, as instrument number
26  20121400719. See Exhibit "3" for a true and correct copy of Trustee's Deed Upon Sale.

27                                              2

1  Plaintiff first became aware that the Property was sold in a foreclosure sale after remitting the
2  second forbearance payment pursuant to the Agreement. Upon learning of the sale, Plaintiff's
3  husband immediately telephoned Plaintiff direct contact at Homeward Residential, Henry
4  Cruz, and Natalie Gold at Fidelity National Title Company to discuss the unlawful sale and
5  demanded the sale be rescinded pursuant to the Agreement prohibiting Defendants from
6  foreclosing on the Property. From approximately in or about the second week of September
7  2012 forward, Plaintiff and her husband contacted Defendants on a weekly basis trying to
8  obtain updates on the status of the rescission.

9      On or about October 17, 2012, Plaintiff received proof from Fidelity that the sale was
10  rescinded pursuant to a Notice of Rescission of Trustee's Deed Upon Sale recorded as
11  instrument number 20121462963. See Exhibit "4" for a true and correct copy of Notice of
12  Rescission of Trustee's Deed Upon Sale. On or about October 25, 2012, Mr. Cruz from
13  Homeward could not confirm the who held title to the Property.

14      On or about November 4, 2012, Mr. Cruz confirmed in writing that the sale was
15  rescinded and that the "2nd installment under the three month stipulated repayment plan" was
16  received. Subsequently, on November 9, 2012, Mr Cruz contacted Plaintiff's husband via
17  email to discuss a "payment arrangements."

18      Pursuant to the Agreement, Plaintiff attempted to make the third forbearance payment
19  but the Lender would not accept the payment. On or about November 27, 2012, Plaintiff first
20  learned that the Forbearance Agreement, which was previously entered into on August 7,
21  2012, was no longer available to her but the lender was still willing to work out a payment
22  arrangement and/or loan modification to resolve the arrearages on the loan.

23      On December 3, 2012, Plaintiff's husband contacted the Lender regarding the sale
24  scheduled for December 6, 2012, requesting that it place the sale on hold as promised. Later
25  that day, Mr. Cruz confirmed that the foreclosure sale was placed on hold. Subsequently, on
26  January 2, 2013, Plaintiff's husband contacted the Lender regarding the sale scheduled for

27                                                  3

1 │ January 7, 2013, requesting that the sale be placed hold as previously promised "until we
2 │ resolve the issues." Again, later that day, Mr. Cruz responded stating that he "made a request
3 │ to postpone [the] foreclosure sale for another 30 days."

4 │       Currently, a trustee sale is scheduled to take place on February 11, 2013, at 9:00 a.m.
5 │ pursuant to a notice of sale recorded as instrument number 20121661635 on November 1,
6 │ 2012. Despite ongoing negotiations with Defendants regarding a forbearance, loan
7 │ modification and/or payment arrangements to resolve any and all arrearages on the loan
8 │ related to the Property.

9 │       Plaintiff and her husband, David Eisenberg, have been in constant communication with
10 │ Defendants since in or about early August 2012 regarding same, and just learned this
11 │ afternoon, February 7, 2013, at approximately 12:10 p.m. that Defendants are failing and
12 │ refusing to enter into a loan modification and/or payment plan despite prior promises to do
13 │ so and after contacting Defendants at least 10 times in the last month alone in hopes of
14 │ obtaining a resolution to same. Plaintiff mistakenly believed, according to the Lender's
15 │ general practice, that Mr. Cruz would confirm that the sale scheduled for February 11, 2013
16 │ was on hold until she finalized a payment arrangement with the Lender.

17 │       On or about January 15 and 30, 2013, Plaintiff's husband left voicemails for Mr. Cruz
18 │ which went unreturned, relating finalizing a payment arrangement. On February 3, 2013,
19 │ Plaintiff's husband emailed regarding putting the sale on hold and received no response. He
20 │ followed up the next day, February 4, 2013, with a voicemail to Mr. Cruz regarding same and
21 │ received no return call. On February 5, 2013, Plaintiff's husband emailed and left a voicemail
22 │ for Mr. Cruz and received no response. On February 6, 2013, Plaintiff and her husband left
23 │ a combined 3 voicemails for Mr. Cruz and Plaintiff's husband wrote Mr. Cruz another email.
24 │ On February 7, 2013, at or before 8:10 a.m. Plaintiff's husband left several voicemails from
25 │ Mr. Cruz and faxed him an urgent request asking for confirmation that the same was
26 │ postponed without any response. By 10:00, Plaintiff's husband contacted Lender and spoke

27 │                                              4

1   with "Pat" at extension 21258 and requested that Pat have Mr. Cruz contact him immediately.

2   At approximately 12:10 p.m. Mr. Cruz, for the first time since the beginning of January 2013,

3   contacted Plaintiff regarding the trustee sale scheduled for February 11, 2013 and advised that

4   the sale would go forward as scheduled and was no longer "on hold." During the

5   aforementioned conversation, Plaintiff's husband requested to speak with a supervisor and

6   was advised by Mr. Cruz that a supervisor would contact them by days end, which never

7   happened.

8   **III.    ARGUMENT**

9       **A.    Plaintiff Is Entitled To a TRO and Order to Show Cause Why Preliminary**

10          **Injunction Should Not Issue Pending a Hearing On the OSC Re**

11          **Preliminary Injunction**

12      California Code of Civil Procedure Section 527(c) permits a court to issue a temporary

13  restraining order and order to show cause why a preliminary injunction should *not* issue --

14  without the statutory notice -- where the plaintiff demonstrates great or irreparable injury will

15  occur before the hearing on notice and that the plaintiff (or her counsel) provided the notice

16  required pursuant to C.C.P. § 527(c)(2).   C.C.P. § 527(c) sets forth the following

17  requirements for a TRO:

18
19      "(1) [That] [i]t appears from facts shown by affidavit or by the verified
       complaint that great or irreparable injury will result to the applicant before the
       matter can be heard on notice.

20      (2) The applicant or the applicant's attorney certifies one of the following to the
       court under oath:

21      (A) That within a reasonable time prior to the application the applicant
       informed the opposing party or the opposing party's attorney at what time and

22      where the application would be made.
       (B) That the applicant in good faith attempted but was unable to inform the

23      opposing party and the opposing party's attorney, specifying the efforts made
       to contact them.

24      (C) That for reasons specified the applicant should not be required to so inform
       the opposing party or the opposing party's attorney."

25  Each of these requirements is met here.

26

27

28

1          **1.**    **Plaintifff Is Likely To Succeed On The Merits Of Their Claims**

2         On or about August 7, 2012, Plaintiff and Defendant Homeward Residential, Inc.

3 ("Lender") entered into a Forbearance Agreement (the "Agreement") that permitted

4 forbearance payments from August-October 2012. Despite having received on time payments

5 from Plaintiff for August and September 2012, Defendant foreclosed on Plaintiff's property

6 in direct breach of the Agreement. After the sale was finally rescinded, the Lender was no

7 longer willing to accept payments pursuant to the Agreement, enter into a further Forbearance

8 Agreement nor enter into a payment arrangement despite promises to do so for the purpose

9 of curing the arrearages on the loan.

10         The law is well settled that the decision to grant a preliminary injunction rests in the

11 sound discretion of the trial court. "A trial court will be found to have abused its discretion

12 only when it has 'exceeded the bounds of reason or contravened the uncontradicted

13 evidence.'" ReadyLink Healthcare v. Cotton (2005) 126 Cal.App.4th 1006, 1016.

14         In exercising that discretion, the court should evaluate two interrelated factors: (1) the

15 likelihood that the moving party will prevail on the merits at trial, and (2) the interim harm

16 that the moving party is likely to sustain if the injunction were denied as compared to the

17 harm that the opposing party is likely to suffer if the preliminary injunction were issued.

18 Nutro Products, Inc. v. Cole Grain Co. (1992) 3 Cal.App.4th 860, 865. "A trial court should

19 grant a preliminary injunction only if the plaintiff shows a 'reasonable probability' that he

20 would prevail at trial and would suffer more harm from a denial than the defendant would

21 suffer from its grant." Scaringe v. J. C. C. Enterprises, Inc. (1988) 205 Cal.App.3d 1536,

22 1542-43. See *also* code Civ. Proc. §§526, 527.

23         **2.**    **Unless A Temporary Restraining Order Is Issued, The Court's**

24                  **Ultimate Judgment For Plaintiff Will Be Ineffectual.**

25         California Code of Civil Procedure, § 526(a)(3) provides that the Court may enjoin any

26 acts by a defendant which would render ineffectual an ultimate judgment against that

27                                  6

28     EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
                        RE: PRELIMINARY INJUNCTION; DECLARATIONS

defendant. If Defendants are permitted to evict Plaintiff, she and her husband will lose their home and literally be on the streets. An order restraining Defendants from foreclosing on theProperty is the only adequate way for this Court to issue an effective final judgment in this case.

### 3. A Balancing of The Plaintiff's Interests With Alonso's Rights Mandates The Issuance of a Preliminary Injunction

In determining whether to issue a Preliminary Injunction, the Court does not decide the merits, but balances the equities involved in a particular case. The Court should consider which party to the litigation will bear the greater injury if the injunction is not granted and the reasonable probability that the Plaintiff will ultimately prevail on the merits. State Board of Barber's Examiners v. Star (1970) 9 Cal.3d 736.

In balancing the equities, the Court should consider:

"...whether a greater injury will result to the Defendant from granting the injunction than to Plaintiff from refusing it..... In the last analysis, the trial Court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation]."

Continental Baking Co. v. Katz (1968) 68 Cal.2d 512, 528.

Plaintiff, whose claims are likely to succeed, will suffer irreparable injury if Alonso continues to collect rents, as such rents will be dissipated and become unrecoverable.

### 4. Plaintiff Will Be Irreparably Harmed If Alonso Is Not Restrained

Plaintiff has no adequate remedy at law and will suffer further irreparable injury unless a temporary restraining order is issued. In order to prevent irreparable injury to him, Plaintiff requests that this Court immediately enjoin Defendants from unlawfully foreclosing the Property.

### 5. Plaintiff Has Provided The Requisite Notice For a TRO and OSC Re Preliminary Injunction

As stated in the Declaration of Rachel S. Ruttenberg, Plaintiff has provided reasonable

7

1  notice of the application for a Temporary Restraining Order and OSC regarding Preliminary
2  Injunction.  (Ruttenberg Decl., ¶ 2).

3      **B.**    <u>**Granting The Requested Relief Will Cause No Hardship**</u>

4        In stark contrast to Plaintiff, Defendants will suffer no harm if this Court grants
5  Plaintiff's request for a TRO/preliminary injunction.  Moreover, the court could impose
6  reasonable conditions on such relief during the pendency of any injunction.  The relative
7  hardships clearly weigh in Plaintiff's favor, and this court should therefore grant Plaintiff's
8  application and enjoin Defendants from misappropriating any further rents.

9      **C.**    <u>**The Status Quo Must Be Maintained Until a Final Determination on The**</u>
10         <u>**Merits**</u>

11        It has long been the rule in California that the status quo must be maintained until a
12  final determination on the merits of the action when required at a preliminary injunction.
13  <u>Continental Baking Co. v. Katz</u> (1968) 68 Cal.2d 512, 528; and <u>People v. Black's Food Store</u>
14  (1940) 16 Cal.2d 59, 62.  This is as a matter of law.  <u>Stockton v. Newman</u> (1957) 148
15  Cal.App.2d 558, 563.

16        Plaintiff has satisfied the requirements for obtaining a temporary restraining order and
17  relief.  Additionally, Plaintiff should prevail on the OSC re: Preliminary Injunction.  For these
18  reasons, Plaintiff is  entitled to an injunction.  To that end a trial court 'must exercise its
19  discretion 'in favor of the party most likely to be injured." <u>Nutro Products, Inc. V. Cole Grain</u>
20  <u>Co.</u> (1992) 3 Cal.App.4th 860, 867.

21        "The concept of irreparable injury' which authorizes the interposition of a court of
22  equity by way of injunction does not concern itself entirely with injury beyond the possibility
23  of repair or beyond possible compensation in damages. Rather, by definition, an injunction
24  properly issues in any case where 'it would be extremely difficult to ascertain the amount of
25  compensation which would afford adequate relief.'" <u>Wind v. Herbert</u> (1960) 186 Cal.App.2d
26  276, 285. Additionally, the fact that "only money is involved. <u>Mitsui Manufacturers Bank v.</u>

27                                      8

1    <u>Texas Commerce Bank-Fort Worth</u> (1984) 159 Cal.App.3d 1051, 1059.

2    **IV.    <u>CONCLUSION</u>**

3        Based on the foregoing, Plaintiff respectfully requests that the Court grant this

4    application for a temporary restraining order and issue an order to show cause regarding a

5    preliminary injunction enjoining Defendants from, inter alia, collecting rents.

6    Dated: February 8, 2013          LAW OFFICES OF MARK E. GOODFRIEND

7     

8    By: _____
     Mark E. Goodfriend
     Rachel S. Ruttenberg, Attorneys for Plaintiff
9    KATHLEEN ANGEL EISENBERG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    1

## DECLARATION OF KATHLEEN ANGEL EISENBERG

I, Kathleen Angel Eisenberg, declare:

1.    I am the Plaintiff in this action and I have personal knowledge of the facts stated herein, and if called as a witness, would and could competently testify thereto.  I make this declaration in support of the application for an Order to Show Cause and Temporary Restraining Order filed concurrently herewith.

2.    I own the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 (the "Property"). On or about August 7, 2012, myself and Homeward Residential, Inc. ("Lender") entered into a Forbearance Agreement (the "Agreement") whereby "Lender is willing to postpone or forbear from initiating any Foreclosure Proceedings." See Forbearance Agreement, unnumbered ¶ 6, a true and correct copy of which is attached hereto as Exhibit "1." Pursuant to the terms of the Agreement, I "shall begin making monthly forbearance payments of 14033 and 08/100 Dollars ($ 14033.08) beginning the 8 day of August, 2012 and continuing on the same day of each subsequent month until 10/08/12." See Exhibit "1" numbered ¶ 4. Defendants told me and my husband that upon completion of the Agreement and receipt of three timely payments thereunder, a Permanent Forbearance Agreement would take effect, which would be similar to the August 2012 Agreement.

3.    Pursuant to the Agreement, I made two payments of $14,033.08 to Lender. The first payment was made on August 7, 2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight mail to Lender, which was subsequently credited to her account with Lender on August 13, 2012. The second payment was made on September 5, 2012 by a cashier's check drawn off of Plaintiff's Bank of America account via overnight mail to Lender, which was subsequently credited to her account with Lender on September 14, 2012. See Exhibit "2" for true and correct copies of the Bank of America cashier's checks in addition to Lender's Customer Account Activity Statement demonstrating when my

2

1  payments were credited to her account.

2      4.    Unbeknownst to me, a Trustee's Sale was held August 30, 2012, which resulted
3  in the recording of a Trustee's Deed Upon Sale on September 18, 2012, as instrument number
4  20121400719. See Exhibit "3" for a true and correct copy of Trustee's Deed Upon Sale. I first
5  became aware that the Property was sold in a foreclosure sale after remitting the second
6  forbearance payment pursuant to the Agreement.

7      5.    Upon learning of the sale, my direct contact at Homeward Residential, Henry
8  Cruz, and Natalie Gold at Fidelity National Title Company to discuss the unlawful sale and
9  demand the sale be rescinded pursuant to the Agreement prohibiting Defendants from
10  foreclosing on the Property. From approximately in or about the second week of September
11  2012 forward, myself and my husband contacted Defendants on a weekly basis trying to
12  obtain updates on the status of the rescission.

13      6.    On or about October 17, 2012, I received proof from Fidelity that the sale was
14  rescinded pursuant to a Notice of Rescission of Trustee's Deed Upon Sale recorded as
15  instrument number 20121462963. See Exhibit "4" for a true and correct copy of Notice of
16  Rescission of Trustee's Deed Upon Sale. On or about October 25, 2012, Mr. Cruz from
17  Homeward could not confirm the who held title to the Property.

18      7.    On or about November 4, 2012, Mr. Cruz confirmed in writing that the sale was
19  rescinded and that the "2nd installment under the three month stipulated repayment plan" was
20  received. Subsequently, on November 9, 2012, Mr Cruz contacted my husband via email to
21  discuss a "payment arrangements." See Exhibit "5" for a true and correct copies of emails
22  between Plaintiff and her husband on the one hand and Defendants on the other.

23      8.    Pursuant to the Agreement, I attempted to make the third forbearance payment
24  but the Lender would not accept the payment. On or about November 27, 2012, I first learned
25  that the Forbearance Agreement, which was previously entered into on August 7, 2012, was
26  no longer available to me but the lender was still willing to work out a payment arrangement

27          3

1  and/or loan modification to resolve the arrearages on the loan.

2      9.      On December 3, 2012, my husband contacted the Lender regarding the sale
3  scheduled for December 6, 2012, requesting that it place the sale on hold as promised. Later
4  that day, Mr. Cruz confirmed that the foreclosure sale was placed on hold. Subsequently, on
5  January 2, 2013, my husband contacted the Lender regarding the sale scheduled for January
6  7, 2013, requesting that the sale be placed hold as previously promised "until we resolve the
7  issues." Again, later that day, Mr. Cruz responded stating that he "made a request to postpone
8  [the] foreclosure sale for another 30 days."

9      10.     Currently, a trustee sale is scheduled to take place on February 11, 2013, at 9:00
10  a.m. pursuant to a notice of sale recorded as instrument number 20121661635 on November
11  1, 2012. Despite ongoing negotiations with Defendants regarding a forbearance, loan
12  modification and/or payment arrangements to resolve any and all arrearages on the loan
13  related to the Property.

14      11.     Myself and my husband, David Eisenberg, have been in constant
15  communication with Defendants since in or about early August 2012 regarding same, and just
16  learned this afternoon, February 7, 2013, at approximately 12:10 p.m. that Defendants are
17  failing and refusing to enter into a loan modification and/or payment plan despite prior
18  promises to do so and after contacting Defendants at least 10 times in the last month alone in
19  hopes of obtaining a resolution to same. I mistakenly believed, according to the Lender's
20  general practice, that Mr. Cruz would confirm that the sale scheduled for February 11, 2013
21  was on hold until we finalized a payment arrangement with the Lender.

22      12.     On or about January 15 and 30, 2013, my husband left voicemails for Mr. Cruz
23  which went unreturned, relating finalizing a payment arrangement. On February 3, 2013, my
24  husband emailed regarding putting the sale on hold and received no response. He followed
25  up the next day, February 4, 2013, with a voicemail to Mr. Cruz regarding same and received
26  no return call. On February 5, 2013, my husband emailed and left a voicemail for Mr. Cruz

27                                          4

28  EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
    RE: PRELIMINARY INJUNCTION; DECLARATIONS

1   voicemails for Mr. Cruz and my husband wrote Mr. Cruz another email. On February 7, 2013,

2   at or before 8:10 a.m. my husband left several voicemails from Mr. Cruz and faxed him an

3   urgent request asking for confirmation that the same was postponed without any response. By

4   10:00, my husband contacted Lender and spoke with "Pat" at extension 21258 and requested

5   that Pat have Mr. Cruz contact him immediately. At approximately 12:10 p.m. Mr. Cruz, for

6   the first time since the beginning of January 2013, contacted myself or my husband regarding

7   the trustee sale scheduled for February 11, 2013 and advised that the sale would go forward

8   as scheduled and was no longer "on hold." During the aforementioned conversation, my

9   husband requested to speak with a supervisor and was advised by Mr. Cruz that a supervisor

10  would contact them by days end, which never happened. See Exhibit "5."

11          I declare under penalty of perjury under the laws of the United States of America and

12  the State of California that the foregoing is true and correct.

13          Executed on February 8, 2013 at Los Angeles County, California

14

15

16  KATHLEEN ANGEL EISENBERG

17

18

19

20

21

22

23

24

25

26

27                                              5

## DECLARATION OF RACHEL S. RUTTENBERG

I, Rachel S. Ruttenberg, declare:

1.      I am counsel for Plaintiff KATHLEEN ANGEL EISENBERG and have personal knowledge of the facts stated herein, and if called as a witness, would and could competently testify thereto. I make this declaration in support of the application for an Order to Show Cause and Temporary Restraining Order filed concurrently herewith.

2.      On February 7, 2013, at 4:57 p.m., my colleague, Mark E. Goodfriend, gave ex parte notice by telephone to Fidelity, and left a message with Natalie Gold's associate that Plaintiff would be moving ex parte on February 8, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

3.      On February 7, 2013, at 4:59 p.m., I also gave ex parte notice by telephone to Homeward by leaving a voicemail on Mr. Cruz extension that Plaintiff would be moving ex parte on February 8, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

4.      Additionally, on February 5, 2013, at 5:05 p.m., I further gave notice to Mr. Cruz and Ms. Gold via email, a true and correct copy of which is attached hereto as Exhibit "6," that Plaintiff would be moving ex parte on February 1, 2013 at 8:30 a.m. in a Department assigned by the clerk of court to enjoin Defendants from selling the property located at 25431 Prado De Las Fresas, Calabasas, CA 91302-3660.

5.      I was unable to complete notice prior to 10:00 a.m. because Plaintiff was not informed and advised of Defendants' intention to proceed with the sale until after 12:00 p.m. on February 7, 2013. I was subsequently contact by Plaintiff in the afternoon and did not meet with until approximately 4:40 p.m., which is when I was retained. I acted promptly thereafter to advise Defendants, that confirmed receipt of my notice of this application at approximately

6

1   6:45 p.m. yesterday to Plaintiff, who was still in my office at the time.

2         I declare under penalty of perjury under the laws of the United States of America and

3   the State of California that the foregoing is true and correct.

4         Executed on February 8, 2013 at Los Angeles County, California

5

6                           Rachel S. Ruttenberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                       7

28   EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
                    RE: PRELIMINARY INJUNCTION; DECLARATIONS

Agreement

## FORBEARANCE AGREEMENT

Loan Number : 0031284599

This Forbearance Agreement ('Agreement') is made and entered into on 08/07/12 , by and between Homeward Residential, Inc.(Lender) and KATHLEEN EISENBERG (whether one or more, 'Borrower').

WHEREAS, Borrower executed that certain promissory note ('Note'), dated 07/24/2006, in the original principal amount of $229,000.00 , and secured by a mortgage, deed of trust, or deed to secure debt of even date therewith ('Security Instrument ) covering the premises commonly known as 25431 PRADO DE LAS FRESAS CALABASAS CA 91302 ('Property'), the Note and Security Instrument being collectively referred to herein as the 'Loan' and

WHEREAS, Borrower has defaulted in making payments under the Loan ("Default") and currently is unable to remedy such default by paying all amounts currently due but unpaid pursuant to the Loan; and

WHEREAS, as a result of the Default, judicial or non-judicial foreclosure proceedings have been initiated or will be initiated by or on behalf of Lender against the Property in order to collect the sums due and payable pursuant to the Loan ("Foreclosure Proceeding");

WHEREAS, Borrower desires to postpone or prevent the Foreclosure Proceedings, and

WHEREAS, Lender is willing to postpone or forbear from initiating any Foreclosure Proceeding in accordance with the terms of this Agreement

NOW, THEREFORE, for good and valuable consideration, the adequacy and receipt of which are acknowledged by Borrower and Lender, Borrower and Lender agree as follows:

1. That the above recitals are true and correct and incorporated herein for all purposes by reference.

2. That Lender will suspend or forbear from initiating any Foreclosure Proceeding upon receipt and acceptance of this Agreement, fully executed by Borrower, and a certified check in the amount of 14053 and 08/100 Dollars $14053.08) made payable to Lender ("Initial Payment"). Any sale scheduled with regard to any existing Foreclosure Proceeding will be cancelled by Lender but the Foreclosure Proceeding will not be dismissed until the Default has been fully cured and all amounts then presently due and unpaid pursuant to the Loan have been paid

3. The Initial Payment and this Agreement, fully executed by Borrower, must be received by Lender by August 13, 2012 , or this Agreement shall have no force or effect. Until such receipt and acceptance, no action will be taken by Lender to cease collection activities, including postponement of any scheduled sale pursuant to any existing Foreclosure Proceeding. This Agreement shall not be considered as 'received and accepted' by Lender until it has been internally date stamped by Lender.

4. Borrower shall begin making monthly forbearance payments of 14053 and 08/100 Dollars ($ 14053.08), beginning the 8 day of August, 2012 and continuing on the same day of each subsequent month until 10/08/12 ("Expiration of the Forbearance"), at which time Borrower must fully cure the Default by paying all amounts then presently due and unpaid pursuant to the Loan. If, upon the Expiration of the Forbearance, Borrower is unable to fully cure the Default, Lender shall consider the Borrower and Loan for any available and appropriate foreclosure prevention option ("Foreclosure Prevention Option") in accordance with Lender's then current policies and procedures. Borrower acknowledges that Lender has not guaranteed or assured and hereby does not guarantee and assure Borrower that Borrower and the Loan will qualify or be accepted by Lender for any Foreclosure Prevention Option.

5. All of Borrower's rights and responsibilities under, and all of the terms and conditions of the Note and Security Instrument, shall remain in full force and effect, except as expressly modified by this Agreement. Nothing contained in this Agreement shall be construed to impair the Security Instrument or affect or impair Lender's rights or powers under the Loan to recover any sum due pursuant to the Loan, except as expressly modified by this Agreement.

6. In the event of default under this Agreement or in the event Borrower and the Loan do not qualify for any Foreclosure Prevention Option upon the Expiration of the Forbearance, Borrower agrees: (a) that normal collection activities may be resumed by Lender, including without limitation the resumption of any foreclosure sale pursuant to any existing Foreclosure Proceeding or the initiation of any new Foreclosure Proceeding; and (b) that the Loan has been accelerated properly, that no further acceleration is required; and that any existing Foreclosure Proceeding, or any foreclosure sale previously scheduled, may continue without further notice, except as otherwise required by applicable law.

Forbearance Agreement                                        Revised 04-29-2011                                        1

Exhibit 1

such time as the Default is fully cured and all amounts due and unpaid pursuant to the Loan have been paid, the Loan remains delinquent and Lender may continue to report the Loan as delinquent to any credit reporting agency.

8. Regardless of whether Borrower makes payments pursuant to this Agreement, interest payable under the Note shall continue to accrue as provided in the Note. In the event the Loan has an adjustable rate feature, any adjustments to the interest rate and any corresponding adjustment to the monthly payment due under the Note may be made by Lender.

9. All payments made by Borrower pursuant to this Agreement shall be applied to the Loan as provided in the Loan.

10. Acceptance of funds pursuant to this Agreement shall constitute neither a waiver of any default nor a waiver of acceleration of the Loan in default.

11. This Agreement shall not constitute a reinstatement of the Loan.

12. Time is of the essence.

13. This Agreement constitutes the only agreement between Borrower and Lender with regard to the Default. All written and oral agreements entered into by Borrower and Lender prior to this Agreement shall be deemed to be void and of no further effect

14. Borrower acknowledges that Borrower has been afforded the opportunity by Lender to seek legal counsel with regard to this Agreement.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed as of the date first above written.

_____  8-7-12
Borrower:

_____
Borrower:

Forbearance Agreement                     Revised 04-27-2011

USPS.com® - Track & Confirm                                                              Page 1 of 1

English        Customer Service        USPS Mobile                                    Register / Sign In

**≡USPS.COM**                                                  Search USPS.com or Track Packages

Quick Tools              Ship a Package        Send Mail      Manage Your Mail      Shop      Business Solutions

# Track & Confirm

GET EMAIL UPDATES     PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| EG976214371US | Express Mail® | Arrival at Post Office | September 07, 2012, 9:15 am | COPPELL, TX 75019 | Guaranteed By: September 8, 2012, 3:00 PM Proof of Delivery |
| | | Processed through USPS Sort Facility | September 07, 2012, 6:17 am | COPPELL, TX 75099 | |
| | | Processed through USPS Sort Facility | September 05, 2012, 4:57 pm | VAN NUYS, CA 91408 | |
| | | Acceptance | September 05, 2012, 12:34 pm | CALABASAS, CA 91302 | |

**Check on Another Item**

What's your label (or receipt) number?

Find

| LEGAL | ON USPS.COM | ON ABOUT.USPS.COM | OTHER USPS SITES |
|---|---|---|---|
| Privacy Policy › | Government Services › | About USPS Home › | Business Customer Gateway › |
| Terms of Use › | Buy Stamps & Shop › | Newsroom › | Postal Inspectors › |
| EEO › | Print a Label with Postage › | Mail Service Updates › | Inspector General › |
| No FEAR Act EEO Data › | Customer Service › | Forms & Publications › | Postal Explorer › |
| | Site Index › | Careers › | |

Copyright© 2012 USPS. All Rights Reserved.

---

**Bank of America** ⪢⪢⪢                **Cashier's Check**          No. **000646353**

Notice to Purchaser—In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Date          SEPTEMBER 05, 2012                    91-170/1221
                                                    NAZ

Banking        EL CAMINO CENTER
Center

   0002435  00001   1000646353           KATHY ANGEL
                                    Remitter (Purchased By)

                                                              $   **14033.08**

Pay      **FOURTEEN THOUSAND THIRTY THREE DOLLARS AND 08 CENTS**

To
The
Order    **HOWARD RESIDENTIAL**
Of       **LOAN # 0051204135**

                                              **Non-Negotiable**

                                              Authorized Signature
Bank of America, N.A.          **VOID AFTER 90 DAYS**
Phoenix, AZ                                    Customer Copy            457022259767
                                           Retain For Your Records

Exhibit 2
· 9/7/2012



**Bank of America**

Cashier's Check

No. 4157163363

Notice to Purchaser: In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90days.

Banking Center

CLEARLAKE

0862902 00863    0005716363

Date   AUGUST 07, 2012

KATHLEEN KISINGER
Remitter (Purchased By)

11-35/1210
NCA

Pay **FOURTEEN THOUSAND THIRTY THREE DOLLARS AND 08 CENTS**

To
The
Order
Of

**KATHLEEN KISINGER**
****

VOID AFTER 90 DAYS

$ **14033.08**

Non-Negotiable

Authorized Signature
Customer Copy
Retain For Your Records

1397085076

Bank of America, N.A.
San Francisco, CA

05-14-3774B 01-2010

```
                    HOMEWARD RESIDENTIAL, INC.
                     1525 SOUTH BELT LINE ROAD
                        COPPELL, TX 75019

                  TELEPHONE NO.:  1-877-304-3100

             CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 12/03/12
REQ BY BH7                                                PAGE    2


KATHLEEN ANGEL EISENBERG
LOAN NUMBER: 0031284599

                    ACTIVITY FOR PERIOD 01/01/10 - 12/01/12
PROCESS    DUE    TRANSACTION          TRANSACTION           EFFECTIVE DATE
DATE       DATE   CODE                 DESCRIPTION           OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/          ESCROW PAID/ -----------OTHER------------
   AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
10-17-12  00-00  632  STATUTORY EXPENSES
     21.00         0.00       0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
     35.00         0.00       0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
 10,840.20         0.00       0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
 17,137.79         0.00       0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
    195.00         0.00       0.00      0.00
10-17-12  00-00  630  ATTORNEY ADVANCES
    195.00         0.00       0.00      0.00
10-09-12  00-00  633  MISC. F/C AND B/R EXPENSES
     10.00         0.00       0.00      0.00
10-08-12  00-00  632  STATUTORY EXPENSES
     27.00         0.00       0.00      0.00
09-28-12  00-00  630  ATTORNEY ADVANCES
    172.50         0.00       0.00      0.00
09-14-12  10-11  168  REPAY OF ESCROW ADVANCE
      0.00         0.00       0.00   3494.23-  3,494.23
09-14-12  10-11  173  PAYMENT
 14,933.08     4,039.13   6,499.72   3494.23
            2,832,202.37            14425.55-  NEW PRINCIPAL/ESCROW BALANCES
09-12-12  00-00  633  MISC. F/C AND B/R EXPENSES
     10.00         0.00       0.00      0.00
08-13-12  09-11  168  REPAY OF ESCROW ADVANCE
      0.00         0.00       0.00   3494.23-  3,494.23
08-13-12  09-11  173  PAYMENT                               08-09-12
 14,933.08     4,029.89   6,508.96   3494.23
            2,836,241.50            17919.78-  NEW PRINCIPAL/ESCROW BALANCES
08-09-12  00-00  633  MISC. F/C AND B/R EXPENSES
     10.00         0.00       0.00      0.00
07-25-12  00-00  633  MISC. F/C AND B/R EXPENSES
```

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

 

**This page is part of your document - DO NOT DISCARD**



# 20121400719

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/18/12 AT 08:00AM**

Pages:
0004

| | | |
|---|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |

 



**LEADSHEET**



201209180220010

00006453701


004287356

**SEQ:**
**08**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**        r20



*exhibit 3*

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Recording Requested By

WHEN RECORDED MAIL TO   ServiceLink
and
MAIL TAX STATEMENTS TO:

Citibank, N.A., as Trustee for American Home
Mortgage Assets Trust 2006-4, Mortgage-Backed
Pass-Through Certificates Series 2006-4
c/o Homeward Residential, Inc., f/k/a American
Home Mortgage Servicing, Inc.

4875 Belfort Road, Suite 130

Jacksonville, FL 32256



09/18/2012

*20121400719*

---

Trustee Sale No. 11-03167-6   Loan No. 0031284599   Title Order No. 931421

## TRUSTEE'S DEED UPON SALE

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

APN 2069-102-022

The undersigned grantor declares:
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was ....................................$2,969,857.93
3) The amount paid by the grantee at the trustee sale was.....................................$2,682,586.71
4) The documentary transfer tax is .......................................................................$00.00
5) Said property is in the City of CALABASAS, Los Angeles County

POWER DEFAULT SERVICES, INC (herein called Trustee), as the duly appointed Trustee under the
Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty,
express or implied, to Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-4,
Mortgage-Backed Pass-Through Certificates Series 2006-4 (herein called Grantee), all of its right, title and
interest in and to that certain property situated in the County of Los Angeles, State of California, described
as follows:

See Property Description Attached Hereto as Exhibit "A"

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust
dated 07/24/2006 and executed by KATHLEEN ANGEL EISENBERG, A MARRIED WOMAN AS HER
SOLE AND SEPERATE PROPERTY, as Trustor, and recorded on July 27, 2006, as Instrument No. 06
1664292 of Official Records in the office of the Recorder of Los Angeles County, CA, and after fulfillment
of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of
the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice
of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of
copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of
Trust, sold the herein described property at public auction on August 30, 2012. Grantee, being the highest
bidder at said sale, became the purchaser of said property for the amount bid being $2,682,586.71 in
lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust

1

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

at the time of said Trustee's Sale.

Dated: September 10, 2012

*3*

POWER DEFAULT SERVICES, INC. as Trustee
By: Fidelity National Title Company, its agent

Rosanna Chavez, Authorized Signature

State of California               )ss.
County of San Francisco           )ss

On September 10 2012, before me, Natalie Gold, Notary Public, personally appeared Rosanna Chavez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Natalie Gold # 1828450
My Commission Expires December 27, 2012

NATALIE GOLD
COMM. # 1828450
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Comm Expires Dec. 27, 2012

(Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Order No.: 931421

Customer Reference: 11-03167-8

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **LOS ANGELES**, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

LOT 10 OF TRACT NO. 35696-20 AS SHOWN AND DEPICTED ON THAT CERTAIN MAP RECORDED IN BOOK 1295, PAGES 41 THROUGH 47, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

EXCEPTING AND RESERVING UNTO GRANTOR ALL THOSE CERTAIN EASEMENTS, RESERVATIONS, RIGHTS, AND RIGHT-OF-WAY REFERRED TO IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE OAKS OF CALABASAS (THE "MASTER ASSOCIATION") RECORDED APRIL 12, 1995, AS INSTRUMENT NO. 95-513260, OFFICIAL RECORDS OF LOS ANGELES COUNTY, AND ANY AMENDMENTS, ADDENDA AND SUPPLEMENTS THERETO (COLLECTIVELY, THE "DECLARATION").

This page is part of your document - **DO NOT DISCARD**





## 20121462963

Pages:
0004

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**09/28/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |





D SHEET



201109280980014



SEC:
01



THIS FORM IS NOT TO BE DUPLICATED      E12

Exhibit 4

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Fidelity National Title Company
135 Main Street, Suite 1900
San Francisco, CA 94105.

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: 11-03167-5 - Loan No:  0031264599

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day September 27, 2012  with respect to the following:

1.)     THAT POWER DEFAULT SERVICES, INC, is the duly appointed Trustee under that certain Deed of Trust dated  July 24, 2006 and recorded July 27, 2006 in Book  NA at Page NA, Instrument No. 06 1664292, wherein KATHLEEN ANGEL EISENBERG, A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY are named as Trustors, FIRST AMERICAN TITLE COMPANY is named as trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME MORTGAGE, is named as beneficiary;

2.)     THAT THE DEED OF TRUST encumbers real property located in the County of  Los Angeles, State of California, described as follows:

APN: 2069-102-022

Legal Description Attached

3.)     THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the beneficiary did declare a default, as set forth in a Notice of Default recorded 11/17/2011 as instrument number in the office of the Recorder of Los Angeles County, State of California

4.)     THAT THE TRUSTEE has been informed that the Beneficiary and Trustee thereby desire to rescind the Trustee's Deed Upon Sale recorded upon the subject property following the foreclosure sale which did occur on 08/30/2012;

5.)     THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the trustee's sale;

NOW THEREFORE, the undersigned hereby rescinds the Trustee's Sale and purported Trustee's Deed Upon Sale recorded 9/18/2012 as recorder's reference number 20121400719, in the office of the Recorder of Los Angeles County, State of California and hereby advises that the Deed of Trust is in full force and effect.

Dated  September 27, 2012

POWER DEFAULT SERVICES, INC, as Trustee
By Fidelity National Title, as its agent

Jason Kane, Authorized Signor

State of California                                )ss.
County of San Francisco            )ss

On September 27, 2012 before me, Elida Rosado, Notary Public, personally appeared Jason Kane, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Elida Rosado # 1882764
My Commission Expires March 14, 2014.

ELIDA ROSADO
COMM. #1882764
Notary Public-California
SAN FRANCISCO COUNTY
My Comm. Exp. MAR. 14, 2014

Order No.: 931421                                    Customer Reference: 11-03167-6

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 10 OF TRACT NO. 33596-20 AS SHOWN AND DEPICTED ON THAT CERTAIN MAP RECORDED IN BOOK 1295, PAGES 41 THROUGH 47, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

EXCEPTING AND RESERVING UNTO GRANTOR ALL THOSE CERTAIN EASEMENTS, RESERVATIONS, RIGHTS, AND RIGHT-OF-WAY REFERRED TO IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE OAKS OF CALABASAS (THE "MASTER ASSOCIATION") RECORDED APRIL 12, 1995, AS INSTRUMENT NO. 95-533260, OFFICIAL RECORDS OF LOS ANGELES COUNTY, AND ANY AMENDMENTS, ADDENDA AND SUPPLEMENTS THERETO (COLLECTIVELY, THE "DECLARATION").



**FAX**

*HELP. URGENT - Please*

For: Henry Cruz

Fax number: 866-898-9662

From: Kathy Angel Eisenebrg

Fax number: 818-223-9974 / OBYLOANS@aol.com

Date: *FEBRUARY 7, 2013*

Regarding: Loan number #0031284599

Number of pages:

Comments: Forbearance agreement

*I NEED TO KNOW IF YOU POSTPONED THE SALE FOR MONDAY*

*818.324-9905*

*PLEASE CALL TO CONFIRM THAT THE SALE is POSTPONED FOR MONDAY 2/11/2013*

*Exhibit 5*

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/3/2013 7:36:56 A.M. Pacific Standard Time
Subj: Re: Homeward Residential

Mr. Cruz,

I want to get our home loan back on track, and I have the funds to do that, but I need you to keep the sale on hold until I have time to deal with it. I feel I will be able to call you in the next 15 days if not sooner. Thank you for your understanding and I need a return email back by Monday so I do not have to worry about the sale on the 11th.

Sincerely,

David Eisenberg

In a message dated 1/2/2013 7:27:37 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

> Mr. Eisenberg
>
> I have made a request to postpone foreclosure sale for another 30 days.
>
> When would be a good time to have an actual conversation with you?
>
> Thanks,

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/5/2013 8:27:07 A.M. Pacific Standard Time
Subj: Homeward Residential

Mr. Cruz,

I need to hear from you today via email. Please confirm you postponed the sale and that we will clear this up this month as I wrote you in the e-mail I sent on Sunday.

Thanks you very much,

David

Sent from my iPhone

In a message dated 1/2/2013 7:27:37 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

I have made a request to postpone foreclosure sale for another 30 days.

When would be a good time to have an actual conversation with you?

Thanks,

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 2/5/2013 5:25:13 P.M. Pacific Standard Time
Subj: Homeward Residential

Mr. Cruz,

My wife just confirmed with Fidelity that the house is scheduled for sale again on February 11 and your company has not put it on hold. I really need this last extension so I can deal with the issues with the loan. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David


Sent from my iPhone

From: De4loans@aol.com
To: henry.cruz@gohomeward.com
Sent: 2/6/2013 3:44:01 P.M. Pacific Standard Time
Subj: Fwd: Homeward Residential

This is my third or fourth frantic e-mail asking you to confirm the sale is not taking place on Monday. I have seen no reply and I believe my wife left you a message as did I. I need to know what you are going to do so I know what I have to do. Please give me a response one way or the other.

Thank you

Sent from my iPhone

From: Henry.Cruz@gohomeward.com
To: De4loans@aol.com
CC: Henry.Cruz@gohomeward.com
Sent: 1/2/2013 7:27:37 P.M. Pacific Standard Time
Subj: RE: Homeward Residential

Mr. Eisenberg

I have made a request to postpone foreclosure sale for another 30 days.

When would be a good time to have an actual conversation with you?

Thanks,

**From:** De4loans@aol.com [mailto:De4loans@aol.com]
**Sent:** Wednesday, January 02, 2013 12:40 PM
**To:** Henry Cruz
**Subject:** Re: Homeward Residential

Mr. Cruz,

I just confirmed with Fidelity that the house is scheduled for sale again on January 7th and your company has not put it on hold. I do not understand this since your email below assured me that the sale is on hold until we resolve the issues. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David

In a message dated 12/3/2012 12:06:22 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

Our foreclosure department has confirmed that the foreclosure sale has been placed hole.

Thanks,

From: De4loans@aol.com
To: Henry.Cruz@gohomeward.com
Sent: 1/2/2013 10:39:39 A.M. Pacific Standard Time
Subj: Re: Homeward Residential

Mr. Cruz,

I just confirmed with Fidelity that the house is scheduled for sale again on January 7th and your company has not put it on hold. I do not understand this since your email below assured me that the sale is on hold until we resolve the issues. Please call them and send me an email confirming that they are not selling the property on Monday. I need this done today so I can make sure I do not have to take other steps to prevent what happened last time. I will be checking my email in a couple of hours so I need your response by then.

Thank you,

David

In a message dated 12/3/2012 12:06:22 P.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:

Mr. Eisenberg

Our foreclosure department has confirmed that the foreclosure sale has been placed hole,

Thanks,



**From:** De4loans@aol.com [mailto:De4loans@aol.com]
**Sent:** Monday, December 03, 2012 1:30 PM
**To:** Henry Cruz
**Subject:** Re: Homeward Residential



Mr. Cruz,


I just called Fidelity and they said they are selling my home on Thursday. You promised me the sale date was on hold. You need to take care of this Issue ASAP so we can work out the payments.



David


In a message dated 11/29/2012 10:42:28 A.M. Pacific Standard Time, Henry.Cruz@gohomeward.com writes:



---

## 25431 Prado De Las Fresas, Calabasas, CA 91302-3660

---

**Rachel Ruttenberg Milman** <rruttenberg@gmail.com>                     Thu, Feb 7, 2013 at 5:05 PM
To: henry.cruz@gohomeward.com, ngold@fnf.com
Cc: Mark Goodfriend <markgoodfriend@yahoo.com>
Bcc: de4loans@aol.com

Dear Mr. Cruz and Ms. Gold,

Please be advised that our office represents Kathleen Angel Eisenberg and David Eisenberg related to the above referenced property.

Our office will be going in tomorrow, February 8, 2013, at 8:30 a.m., ex parte, seeking a Temporary Retraining Order preventing the sale of the property located 25431 Prado De Las Fresas, Calabasas, CA 91302-3660 and OSC for a hearing on a preliminary injunction which shall further prevent the sale of the aforementioned property. This ex parte application will be heard at the Van Nuys Courthouse, located at 6230 Sylmar Avenue, Van Nuys, California 91401 in the department assigned by the clerk of the court. My cell phone number is 818-681-2710 and I will be appearing on this matter tomorrow in court. Please feel free to contact me if you will be attending the hearing and/or opposing the this ex parte application.

I look forward to hearing from you shortly regarding your intentions.

Sincerely,

—
Rachel S. Ruttenberg, Esq.
16255 Ventura Blvd., Suite 205
Encino, CA 91436
RRuttenberg@gmail.com
(818) 681-2710

---

**Rachel Ruttenberg Milman** <rruttenberg@gmail.com>                     Thu, Feb 7, 2013 at 5:07 PM
To: tamala.dailey@fnf.com
Cc: Mark Goodfriend <markgoodfriend@yahoo.com>
Bcc: de4loans@aol.com

[Quoted text hidden]

---

*exhibit 6*

**EXHIBIT "C"**

Branch :F7I,User :TZ25                  Comment:                                    Station Id :B3XQ

This page is part of your document - DO NOT DISCARD



**06 1664292**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**07/27/06 AT 08:00am**

## TITLE(S) :



L E A D   S H E E T

FEE                                                         D.T.T.



FEE $ 76 - W  94
DAF $ 2 -
C-20

NOTIFICATION SENT-$4

CODE
20

CODE
19

CODE
9____

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA                    Page 1 of 25              Printed on 2/27/2013 12:33:47 AM
Document: TD 2006.1664292

First American Title
Subdivision Tract Sales

Recording Requested By:

Return To:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747

06 1664292

Prepared By:
Joann Stevens
10604 North Trademark Parkway
#300
Rancho Cucamonga, CA
91730 ———————— [Space Above This Line For Recording Data] ————————

## DEED OF TRUST

MIN  100024200013696394

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated **July 24, 2006**
together with all Riders to this document.

(B) "Borrower" is **Kathleen Angel Eisenberg, a married woman as her sole and
separate property**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is **American Home Mortgage**

Lender is a **Corporation**
organized and existing under the laws of **State of New York**

DOC  #:324541                  APPL #:0001369639
CALIFORNIA -Single  Family- Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT WITH MERS   Form 3005  1/01
VMP -6A(CA) (0005).01
Page 1 of 15         DM31  9906.01      Initials
VMP MORTGAGE FORMS - (800)521-7291

199 1711 -

3

Lender's address is  538 Broadhollow Rd, Melville, NY  11747

**(D) "Trustee"** is First American Title Company

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated  July 24, 2006
The Note states that Borrower owes Lender Two Million Two Hundred One Thousand and
No/100                                                                   Dollars
(U.S. $2,201,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    August 1, 2046

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

PREPAYMENT RIDER

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC #:324542                APPL #:0001369639

VMP -6A(CA) (0005).01                Page 2 of 15                Form 3005  1/01

Initials _Kae_

07/27/06

06  1664292

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC  #:324544                    APPL #:0001369639

-6A(CA) (0005) 01                Page 4 of 15          Initials:          Form 3005  1/01

**06  1664292**

Branch :F7I,User :TZ25                              Comment:                                    Station Id :B3XQ

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                           of Los Angeles                                           :
            [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
Lot 10 of Tract No. 35596-20 as shown and depicted on that certain Map
recorded in Book 1295, Pages 41 through 47, inclusive, of Maps in the
Office of the County Recorder of Los Angeles County.
EXCEPTING and reserving unto Grantor all those certain easements,
reservations, rights, and rights-of-way referred to in the Declaration
of Covenants, Conditions and Restrictions for The Oaks of Calabasas
(the "Master Association") recorded April 12, 1995, as Instrument No.
95-513260, Official records of Los Angeles County, and any amendments,
addenda and supplements thereto (collectively, the "Declaration").

### SEE EXHIBIT "A" ATTACHED

Parcel ID Number:  2069-102-022                          which currently has the address of
25431 Prado de las Fresas                                                        [Street]
Calabasas                               [City] , California 91302        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543                   APPL #:0001369639        Initials: _KLP_

-6A(CA) (0005) 01                 Page 1 of 15              Form 3005  1/01

06  1664292

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC  #:324545                    APPL #:0001369639

VMP®-6A(CA) (0005).01                  Page 5 of 15                    Initials: _____    Form 3005  1/01

06 1664292

Branch :F7I,User :TZ25                    Comment:                                 Station Id :B3XQ

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC #:324546                    APPL #:0001369639

-6A(CA) (0005) 01                    Page 6 of 15              Initials _____            Form 3005  1/01

**06  1664292**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC  #:324547                    APPL #:0001369639

VMP®-6A(CA) (0005).01                    Page 7 of 15         Initials: _Kee_    Form 3005  1/01

06  1664292

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

DOC  #:324548                      APPL  #:0001369639

Initials: _KAE_

VMP ®-6A(CA) (0001) 01          Page 8 of 15                        Form 3005  1/01

**06  1664292**

10

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC  #:324549                    APPL  #:0001369639

—6A(CA) (0005).01                Page 9 of 15        Initials _KAE_        Form 3005  1/01

06 1664292

Branch :F7I,User :TZ25                    Comment:                              Station Id :B3XQ

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC #:324550                APPL #:0001369639

-6A(CA) (0005) 01              Page 10 of 15                Form 3005 1/01

Initials: _Kae_

**06 1664292**

Branch :F7I,User :TZ25                    Comment:                        Station Id :B3XQ

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC  #:324551                    APPL  #:0001369639

-6A(CA) (0005).01                 Page 11 of 15          Initials: _____      Form 3005  1/01

**06 1664292**

Branch :F7I,User :TZ25                    Comment:                         Station Id :B3XQ

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:324552              APPL #:0001369639

-6A(CA) (0005) 01            Page 12 of 15                     Form 3005  1/01

Initials Kae

**06 1664292**

Branch :F7I,User :TZ25                    Comment:                    Station Id :B3XQ

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC  #:324553                    APPL #:0001369639

-6A(CA) (0005).01                    Page 11 of 15                    Form 3005  1/01

06 1664292

Branch :F7I,User :TZ25                    Comment:                              Station Id :B3XQ

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                             Kathleen Angel Eisenberg    -Borrower

_____                    _____ (Seal)
                                                                        -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

_____ (Seal)            _____ (Seal)
                  -Borrower                                             -Borrower

DOC   #:324554              APPL #:0001369639
VMP-6A(CA) (0005) 01        Page 14 of 15                Form 3005  1/01

06 1664292

State of California
County of Ventuea

} ss.

On July 24, 2006    before me, Brooks A. Russell, Notary Public
Kathleen Angel Eisenberg                                    personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

BROOKS A. RUSSELL
COMM. #1611118
Notary Public-California
VENTURA COUNTY
My Comm. Exp. Nov 3, 2009

DOC  #:324555                  APPL #:0001369639

-6A(CA)  (0005).01              Page 15 of 15              Form 3005  1/01

06  1664292

Branch :F7I,User :TZ25                    Comment:                              Station Id :B3XQ

**ADJUSTABLE RATE RIDER**

**FIRST FIVE YEAR FIXED PAYMENT - 12MTA**

THIS ADJUSTABLE RATE RIDER is made this 24th day of July, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to American Home Mortgage (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

25431 Prado de las Fresas, Calabasas, CA  91302

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 110.000% OF THE ORIGINAL AMOUNT (OR $ 2,421,100.00 ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of 2.650 % until July 31, 2006 , and the initial monthly payment provided for in the Note will be based on this rate. Commencing August 1, 2006 , I will pay interest at a yearly rate of 8.732 %. Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

Page 1 of 5                    AHM-2032R(Mult) (01/06)

Document # 944929/ Image: 944929.prn  App# 0001369639

06 1664292

Branch :F7I,User :TZ25                                    Comment:                                    Station Id :B3XQ

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of _____September, 2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date"

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields")  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding ____Four and 300 Thousandths____ percentage points ___4.300___ % ("Margin") to the Current Index  The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Document # 944930/ Image: 944930.prn  App# 0001369639

**06 1664292**

Branch :F7I,User :TZ25                    Comment:                              Station Id :B3XQ

Effective commencing __September 1st, 2011__ . (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My Payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated**

**Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion  For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to __110.000%__ of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that __110.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __Five__ anniversary of the due date of the first monthly payment, and on that same day every __Five__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

Page 3 of 5                              AHM-2032R(Mult) (01/06)

Document # 944931/ Image: 944931.prn  App# 0001369639

06 1664292

Branch :F7I,User :TZ25                    Comment:                    Station Id :B3XQ

monthly payment before the effective date of any change   The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

Document # 944932/ Image: 944932.prn   App# 0001369639

06 1664292

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____ (Seal)          _____ (Seal)
Kathleen Angel Eisenberg        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

Page 5 of 5                        AHM-2032R(Mult) (01-06)

Document # 944933/ Image: 944933.prn   App# 0001369639

**06 1664292**

LOS ANGELES,CA                    Page 21 of 25              Printed on 2/27/2013 12:33:51 AM
Document: TD 2006.1664292

Branch :F7I,User :TZ25                    Comment:                                    Station Id :B3XQ

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this   24th                      day of
July, 2006                                   , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
American Home Mortgage

                                                                                    (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

25431 Prado de las Fresas, Calabasas, CA  91302

                              [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in   The Deed, The Declaration
of Covenants, Conditions and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
The Oaks of Calabasas

                         [Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

      **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

      **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

DOC  #:319821        APPL #:0001369639
MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
          UM31  0008            Page 1 of 3                    Initials: _____
VMP-7R (0008)            VMP MORTGAGE FORMS - (800)521-7291              Form 3150 1/01



06 1664292

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

DOC  #:319822        APPL #:0001369639

-7R (0008)                    Page 2 of 3        Initials: _____        Form 3150 1/01

**06  1664292**

Branch :F7I,User :TZ25                    Comment:                                        Station Id :B3XQ

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Kathleen Angel Eisenberg    -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


DOC  #:319823        APPL #:0001369639

-7R (0008)                Page 3 of 3                         Form 3150 1/01


06 1664292

Branch :F7I,User :TZ25                    Comment:                                   Station Id :B3XQ

Order Number:  1991711 (56)
Page Number:  7

## EXHIBIT "A"

### LEGAL DESCRIPTION

Real property in the City of Calabasas, County of Los Angeles, State of California, described as follows:

Lot 10 of Tract No. 35596-20 as shown and depicted on that certain Map recorded in Book 1295, Pages 41 through 47, inclusive, of Maps in the Office of the County Recorder of Los Angeles County.

Excepting and reserving unto Grantor all those certain easements, reservations, rights, and rights-of-way referred to in the Declaration of Covenants, Conditions and Restrictions for The Oaks of Calabasas (the "Master Association") recorded April 12, 1995, as Instrument No. 95-513260, Official records of Los Angeles County, and any amendments, addenda and supplements thereto (collectively, the "Declaration").

06  1664292

*First American Title*

## **PROOF OF SERVICE**

I, Jovete Elguira, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On March 13, 2013, I served the within **NOTICE OF REMOVAL** on all interested parties in this action as follows:

[X]   by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Mark E. Goodfriend, Esq.
Rachel S. Ruttenberg, Esq.
LAW OFFICES OF MARK E. GOODFRIEND
16255 Ventura Blvd., Suite 205
Encino, CA 91436

[X]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY OVERNIGHT EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[X]   (Federal ) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 13, 2013, at Newport Beach, California.

_____
Jovete Elguira

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## CV13- 1814 CAS (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.



**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Kathleen Angel Eisenberg aka, Kathleen Angel | Citibank, N.A. As Trustee For American Home Mortgage Assets Trust 2006-4 Mortgage Backed Pass-Through Certificates Series 2006-4; Homeward Residential, Inc.; Power Default Services, Inc |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (if Known) |
|---|---|
| Mark E. Goodfriend, Esq.; Rachel S. Ruttenberg, Esq. LAW OFFICES OF MARK E. GOODFRIEND 16255 Ventura Blvd., Suite 205, Encino, CA 91436, (818) 783-8866 | T. Robert Finlay, Esq. (167580); Nicole S. Dunn, Esq. (213550) WRIGHT, FINLAY & ZAK, LLP  Nicholas G. Hood (238620) 4665 MacArthur Court, Suite 280, Newport Beach, CA  92660 (949) 477-5050  Fax (949) 608-9142 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** JURY DEMAND: ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23:  ☐ Yes  ☑ No    ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
Fraud; Wrongful Foreclosure; Concealment; Negligence; Violation of California Civil Code §2923.6; Violation of B&P §17200, Slander of Title

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☑ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV13-01814**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | Citibank, N.A. - South Dakota<br>Homeward Residential - Texas<br>Power Default - Texas |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 11, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |